**Dan H. HUNTER and Mountain States Resources Corporation, Appellants,**

v.

**Rogers C. B. MORTON, Secretary of the Interior, Appellee.**

**No. 75–1145.**

United States Court of Appeals, Tenth Circuit.

Argued Sept. 3, 1975.

Decided Jan. 26, 1976.

---

Michael R. Carlston, of Worsley, Snow & Christensen, Salt Lake City, Utah (Reed L. Martineau, Salt Lake City, Utah, with him on the brief), for appellants.

Glen R. Goodsell, Atty., Dept. of Justice (Wallace H. Johnson, Asst. Atty. Gen., and Jacques B. Gelin, Atty., Dept. of Justice, with him on the brief), for appellee.

Before PICKETT, SETH and McWIL-LIAMS, Circuit Judges.

SETH, Circuit Judge.

Appellant Hunter filed at the Land Office of the Bureau of Land Management at Salt Lake City three applications in proper form for coal prospecting permits on public lands pursuant to the Mineral Leasing Act, 30 U.S.C. § 201(b). Upon filing the applications were numbered U–5143, U–5144 and U–5145. In July 1968 the Manager of this Land Office acted upon applications U–5143 and U–5145. In each, a portion of the acreage included in the applications was rejected, and as to the remaining acreage the Decisions stated in each instance that the application "may be allowed as to the following lands upon receipt of a $3,000.00 bond with approved surety and all copies of the enclosed Geological Survey stipulations and revised Sec. 12 of Form 3100–1, Prospecting Application and Permit, properly signed . . ."; the survey descriptions followed. The next paragraphs of the Opinion are in part as follows:

"Thirty days from receipt of this decision are allowed in which to meet the requirements above indicated or appeal to the Director, Bureau of Land Management. If no action is taken within the time allowed, the case will be closed on the records of this office, as to the available lands, without further notice.

"The applicant is allowed the right of appeal to the Director, Bureau of Land Management, in accordance with the regulations in 43 CFR, Subpart 1842. See enclosed Form 1842–1. . . ."

In July 1968 the Manager entirely rejected U–5144.

The applicants took an appeal from the Manager's Decisions insofar as the Decisions rejected their applications. In July 1969 the Director of the Bureau of Land Management approved the Manager's Decisions. Applicants then appealed to the Secretary of the Interior through his Board of Land Appeals. No action was taken by the Secretary or the Board on these appeals. However, on February 13, 1973, the Secretary issued Order No. 2952 which stated his decision to issue no more coal prospecting permits until further notice and to reject all pending applications in order to prepare a program for the orderly development of coal resources with proper regard for the protection of the environment. Following this order the Secretary (Board) rejected applicants' appeals, and rejected the petition for reconsideration.

Thereafter this suit was filed seeking a decree that petitioners owned the permits, for mandamus to direct their formal issuance, and to enjoin the Secretary from advancing claims adverse to applicant's "ownership." The Government filed a Motion for Summary Judgment, a stipulation of facts was filed, and the trial court granted the Government's motion.

On this appeal the applicants sought to remand, and in connection therewith filed two affidavits (as exhibits to the motion to remand). These affidavits of Dan H. Hunter and of Reed L. Martineau were affidavits not part of the trial court proceedings. The material in these affidavits is urged by appellants on several points raised on appeal.

The points urged by appellants on appeal include lack of due process and notice afforded in the choices presented in the administrative appeals when part of the applications was rejected and part was not, also that the Administrative Procedure Act was not followed in the appeals and in the issuance and application of Order 2952. The appellants argue that they acquired an interest or right by their applications to the extent they were not rejected. A separate point of estoppel is urged as to the initial appeals from the Manager's Decisions.

The record before us clearly shows that no permits were issued on the applications. The Decisions clearly "rejected" part of the acreage in each application U–5143 and U–5145 and all of the application U–5144. As to the acreage not

rejected in U–5143 and U–5145, the Decision as above noted stated that the application "may be allowed" as to described lands if certain conditions as to bond and stipulations were met. This basic status was not changed during the course of the administrative appeal. The applicants appealed of course as to the rejection portion of the Manager's Decision. Nothing appears in the record before us to show that the applicants took any action as to the acreage that was not rejected by way of requests that permits issue on such acreage, or in meeting the bond conditions or stipulation conditions expressed in the Decisions, or otherwise. There is nothing in the record to show why the applicants pursued the course of action or inaction that they did as to the acreage not rejected, and thus not reach the final administrative steps. It was perfectly clear in the "may be allowed" wording of the Opinion that these steps were necessary. The Decisions leave much to be desired in the way of clarity in the notice of right to appeal a portion of the Decisions. This wording is obviously standard for an application rejected in its entirety; however, it is sufficient to advise the applicant to take some action as to the acreage not rejected if he wants to move toward a perfected application. The applicant had a duty to respond or react to the Decision in its entirety if he wanted to prompt administrative action. With the Decision the applicant had several choices; these include carrying forward the appeal on the rejected acreage and taking action to meet the conditions imposed as to the rejected acreage; proceeding with the conditions and drop the appeal as to the rejected acreage; also to delay in meeting the conditions as to the approved acreage and proceed with the appeal as to the rejected acreage, or appeal as to the action on the entire application.

From the limited record before us, it appears that the applicant chose to follow one of the last two courses mentioned above. What was done was to proceed with the appeal as to the rejections and nothing else. This is what was done and nothing in the record demonstrates *why* this was done. In view of the silence on "why" we cannot assume there was any improper or unconstitutional administrative action by the Manager. We can just as well assume the choice by the applicant was made in what was then considered his best interest. The plaintiff has the burden of demonstrating a violation of his rights.

The applicant urges here that the trial court held that he could be required to make a choice that was improper or too limited, and was a violation of his rights. We don't decide whether the trial court so stated or not as it makes no difference in this appeal as the court reached the correct conclusion in the disposition of the motion. There is no contention made that any material facts were unresolved.

█ The applicant, as to the acreage not rejected, as well as to the rejected acreage, acquired no property interest or property right. He had applications which were pending, which were unperfected, and as to which express conditions had not been met to precipitate further administrative action on the way to a permit. Under these circumstances it must be held that the applicant took his chances as to major and general policy changes in the administration of the Mineral Leasing Act.

We held in *McTiernan v. Franklin*, 508 F.2d 885 (10th Cir.), as to the rejection of lease offers for oil and gas lands that leasing was permissive with the Secretary. We also there held that no property rights were acquired by the applicant by reason of the filing of an offer. Before the actual issuance of a permit, the appellants would have had no right different from anyone else to explore the lands for coal. In *Hannifin v. Morton*, 444 F.2d 200 (10th Cir.), we also considered the retroactive application of a rental fee on lands in prospecting permits applied for before such fee was announced. We there said: "We are of the opinion that the plaintiff and the members of the class had not acquired any vested right which would preclude sub-

649

jecting them to the operation of the regulation." *See also Southwestern Petroleum Corp. v. Udall,* 361 F.2d 650 (10th Cir.), and *Pankey Land & Cattle Co. v. Hardin,* 427 F.2d 43 (10th Cir.). In *Hannifin v. Morton,* we also said:

" . . . To hold otherwise, and to thereby recognize that the mere filing of an application creates a property right which is immune from modification, would seriously handicap the Secretary in the exercise of his proprietary duties."

■ The appellant argues in effect that Order No. 2952 and the preliminaries thereto actually became a part of these particular administrative proceedings to bring into play all the provisions of the Administrative Procedure Act. The order was certainly used to terminate action on the applications, and to cause their rejection. It thus was of critical importance to the applicants; however, it comes well within the exceptions to the application of the Administrative Procedure Act in that it is a general application of policy and concerns federal property. 5 U.S.C. § 553. The extent of general authority and discretion of the Secretary over public land administration needs no citation of authority. The authority to issue a public statement, as Order No. 2952 with this impact upon individual pending applications, cannot be doubted. It is a basic and necessary part of the exercise of discretion in the administration of public lands, and is contemplated in section 2(a) of the Mineral Leasing Act, 30 U.S.C. § 201(a). This is the exercise of a discretionary and not of a ministerial function. *Thor-Westcliffe Development, Inc. v. Udall,* 114 U.S.App.D.C. 252, 314 F.2d 257.

■ The applicant urges that the doctrine of estoppel should be applied against the Secretary. We do not say that this doctrine can never be applied as to public lands, but certainly the facts here advanced do not come close to the requirements which should be imposed. There are, for all practical purposes,˙ no facts in the record before the trial court

on this point. The post-appeal affidavits cannot be considered as part of this record.

The applicant urges that section 102 of the National Environmental Policy Act of 1969, 42 U.S.C. § 4332, was not complied with in the issuance of Order No. 2952, in that no impact statement was prepared. This matter may not have been separately treated by the trial court, but in view of the recitations in the order itself and the fact that it was a pivotal issue, it may be assumed that the trial court accepted the recitations in the order. Under the state of this record, and with the application of the standards for review, we find no error on this point and no merit to applicant's contention. *See Union Oil Co. of California v. Morton,* 512 F.2d 743 (9th Cir.).

Affirmed.