**Max L. KRUEGER, Appellant,**

v.

**Rogers C. B. MORTON, Secretary of the Interior.**

**No. 75–1456.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 5, 1976.

Decided July 22, 1976.

---

Lynn R. Coleman, Washington, D. C., with whom Michael J. Henke, Washington, D. C., was on the brief for appellant.

John J. Zimmerman, Atty. Dept. of Justice, Washington, D. C., with whom Jacques B. Gelin, Atty. Dept. of Justice, Washington, D. C., was on the brief for appellee. Wallace H. Johnson, Asst. Atty. Gen., Washington, D. C., at the time the record was filed, also entered an appearance for appellee.

Before BAZELON, Chief Judge, LEVENTHAL, Circuit Judge, and CHRISTENSEN,* United States Senior District Judge for the District of Utah.

Opinion for the Court filed by CHRISTENSEN, District Judge.

CHRISTENSEN, District Judge.*

Concluding that the pause ordered by the appellee Secretary in the issuance of coal prospecting permits, although protracted as it turned out, neither required an environmental impact statement nor constituted an abuse of the discretion afforded by relevant statutes, we affirm a summary judgment granted by the district court which dismissed the complaint of a disappointed applicant for such a permit. Whether the pause ultimately proves one "that refreshes" will have to be determined in a different context[1] and in another case to the extent that further judicial question may arise.

Appellant Max L. Krueger in October, 1971, filed with the Colorado office of the Bureau of Land Management, Department of Interior, an application for a coal pros-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Following oral argument in this case, the Secretary issued the long-awaited regulations es-

pecting permit covering some 5,000 acres of land in Colorado. In February, 1973, while the application was pending, the Secretary of the Interior, appellee here, issued Order No. 2952 which in pertinent part stated:

> In the exercise of my discretionary authority under Section 2(b) of the Mineral Leasing Act, as amended (30 U.S.C. § 201(b)), I have decided not to issue prospecting permits for coal under that section until further notice and to reject pending applications for such permits in order to allow the preparation of a program for the more "orderly" development of coal resources upon the public lands of the United States under the Mineral Leasing Act, with proper regard for the protection of the environment.
>
> Accordingly, no prospecting permits for coal under Section 2(b) of the Mineral Leasing Act, *supra*, shall be issued until further notice. All pending applications for such permits shall be rejected.  .  .

> .      .      .      .      .

> I have determined that the issuance of this order is not such a major Federal action significantly affecting the quality of the human environment as to require the preparation of an environmental impact statement under Section 102(2)(C) of the National Environmental Policy Act of 1969 (42 U.S.C. § 4332(2)(C)).

Appellant's application was denied by reason of this order. He appealed to the Board of Land Appeals, Office of Hearings and Appeals, of the Department. This appeal was denied on the stated ground that the decision was "entirely within the discretionary authority of the Secretary." An application for reconsideration was also denied by the Board, which constituted final agency action in the matter. 43 C.F.R. §§ 4.1(3), 4.21(c) (1974). Appellant thereupon filed suit in the district court to set aside the Secretary's order on the primary contentions that the Mining and Minerals Policy Act of 1970[2] directed him to carry out a policy of fostering and encouraging the development of coal resources and that the order suspending the issuance of prospecting permits constituted an abuse of discretion in light of that Act; and that the Secretary's determination that preparation of an environmental impact statement under the National Environmental Policy Act (NEPA)[3] was not required was unreasonable and unsupported by any reviewable administrative record. Cross motions for summary judgment were filed by the parties. The district court rejected both of appellant's contentions, granted the Secretary's motion[4] and dismissed the action.

## STANDING—JURISDICTION

Appellee challenges appellant's standing to question either the validity of Order No.

---

tablishing a broad program for issuing prospecting permits and granting leases. These regulations, 41 Fed.Reg. 2052 (May 17, 1976), are to be a new subpart to 43 C.F.R. 3040, and govern coal leasing, prospecting and licensing. They include provisions for compliance with NEPA and cover the obligations of prospecting permit holders and lease operators. A Final Environmental Impact Statement relative to the regulations already has been filed. These regulations are only part of an on-going process, with rules for prospecting and leasing on "steep slopes" shortly to follow.

**2.** 30 U.S.C. § 21a (1970).

**3.** 42 U.S.C. §§ 4331 et seq. (1970).

**4.** The district court's order was as follows:

"This case came before the Court on the parties' cross motions for summary judgment and supporting memoranda. Upon full consideration, it is our opinion, assuming jurisdiction

to review an act committed to the discretion of the Secretary of the Interior, that the Secretary acted well within the discretionary authority granted under Section 2(b) of the Mineral Leasing Act (30 U.S.C. § 201(b)) in the promulgation of Order No. 2952 forbidding the issuance of prospecting permits for coal until further notice, as a consequence of which plaintiff's application was denied.

"It is our further opinion that such order was not such a major Federal action significantly affecting the environment as to require the preparation of an environmental impact statement pursuant to Section 102(2)(C) of the National Environmental Policy Act of 1969 (42 U.S.C. § 102(2)(C)). There being no genuine issue of material fact, defendant is entitled to judgment as a matter of law." Unpublished Memorandum and Order, *Krueger v. Morton*, Civil No. 74–1256 (D.D.C. Jan. 28, 1975).

2952 or the absence of an environmental impact statement in relation to it. It is argued that the appellant has not alleged specific injury in fact, nor has he demonstrated that possible injury was arguably within any protected zone of interest to satisfy the criteria recognized in *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) and *Ass'n of Data Proc. Ser. Org., Inc. v. Camp*, 397 U.S. 150, 152–53, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Especially is this true, we are asked to understand, since the filing of an application which has not been accepted "does not give any right to a lease, or generate a legal interest which reduces or restricts the discretion vested in the Secretary." *Duesing v. Udall*, 121 U.S.App.D.C. 370, 372–73, 350 F.2d 748, 750–51 (1965), *cert. denied* 383 U.S. 912, 86 S.Ct. 888, 15 L.Ed.2d 667 (1966).

Appellee has confused lack of an established property interest with lack of standing to question allegedly unjustifiable obstacles to the perfection of such an interest. It is true that applicant acquired no vested interest by the mere filing of his application.[5] But he did have the right to avail himself of the application route in an effort to perfect an interest to the extent that this was not precluded by law or some valid exercise of the agency's discretion. Were it otherwise an applicant could be unlawfully deprived of the right to pursue his application to the point of a consummated interest without means for effective complaint.

The pleaded facts sustain appellant's standing to question the validity of Order No. 2952 and the rejection of his application by the Secretary in reliance thereon. *Ass'n of Data Proc. Ser. Org., Inc. v. Camp, supra; Barlow v. Collins*, 397 U.S. 159, 164, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). Appellant was an aggrieved party arguably within the zone of economic interest to be protected or regulated by the Mineral Leasing Act in light of the Mining and Minerals Policy Act. *Sierra Club v. Morton, supra; Ass'n of Data Proc. Ser. Org., Inc. v. Camp, supra; Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Whether there is ground for such question is another matter.

By the same token, appellant has standing to assert a claim that the Secretary erred in not complying with the provisions of NEPA. Since he sufficiently alleged economic injury resulting from the Secretary's order, he may also properly assert non-economic public injury as another consequence of the order of which he complains. *Sierra Club v. Morton, supra*, 405 U.S. at 737, 92 S.Ct. 1361.

The appellee concedes that the court below did have jurisdiction to the extent this may be distinguished from standing, to review the Secretary's decision not to file an impact statement. He asserts, however, that both the district court and this court are without jurisdiction to review the denial of appellant's application since that involves a question "committed to agency discretion by law" as to which, it is argued, the right of judicial review does not exist.[6] This exemption, as appellee was bound to and did concede, is a very narrow one. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Even within the literal confine, jurisdiction has been perceived by regarding the exemption primarily as a limitation to the scope of review,[7] as not precluding review of agency action that infringes upon some legal man-

---

5. *Duesing v. Udall, supra*; *Schraier v. Hickel*, 136 U.S.App.D.C. 81, 419 F.2d 663, 666–67 (1969); *Haley v. Seaton*, 108 U.S.App.D.C. 257, 261, 281 F.2d 620, 624 (1960); *Hunter v. Morton*, 529 F.2d 645 (10th Cir. 1976); *McTiernan v. Franklin*, 508 F.2d 885, 888 (10th Cir. 1975); *Hannifin v. Morton*, 444 F.2d 200, 203 (10th Cir. 1971); *Goodwin v. Andrus*, No. C–5105 (D.Colo. Nov. 25, 1975).

6. The Administrative Procedure Act, 5 U.S.C. § 701(a)(2) provides in part: "This chapter [on judicial review] applies . . . except to the extent that agency action is committed to agency discretion by law."

7. See *Littell v. Morton*, 445 F.2d 1207 (4th Cir. 1971); *Wong Wing Hang v. Immig. and Nat. Serv.*, 360 F.2d 715 (2d Cir. 1966); *Suwannee Steamship Co. v. United States*, 354 F.Supp. 1361 (Ct.Cl.1973).

date and thus is "arbitrary, capricious, [or an] abuse of discretion, or otherwise not in accordance with law," [8] or as a matter of degree.[9]

The present case, however, does not call for nice distinctions. Nor do we think that the answer to this problem is dependent upon the reviewability of any application denial as such.[10] The heart of the problem is not, as the parties seem to assume, the granting vs. the denial of permits; nor is it the conditions under which they are to be issued. It is whether the Secretary had the right, before receiving or approving applications, to order a pause for refreshment of his judgment by further investigation, public input, comprehensive consideration, and rulemaking directed toward the hopefully better implementation of the Mineral Leasing Act in light of NEPA and other significant factors. The latter is not a question committed to agency discretion "by law" although it does involve discretionary judgment concerning the manner of executing powers entrusted to the Secretary. His discretion in this connection is subject to judi-

cial review under the general criteria of § 706. That the law may render quite plain the Secretary's authority to take a second look before making further resource commitments [11] and to determine the appropriate preparation timing [12] does not negate jurisdiction of the courts.

Accordingly, we hold that both standing and jurisdiction are present in light of the controlling principles developed in *Sierra Club v. Morton, supra,* and *Citizens to Preserve Overton Park v. Volpe, supra.*[13]

## THE VALIDITY OF THE ORDER OF SUSPENSION

As we thus have analyzed the jurisdictional issue, little remains to be said concerning the validity of Order No. 2952. Appellant in essence argues that the suspension violated a duty imposed upon the Secretary by the Mining and Minerals Policy Act of 1970 to foster and encourage the exploration and development of coal resources. Whether that Act is looked to, as appellee argues it should be, as merely "a general statement of policy . . . in no

8. 5 U.S.C. § 706. See *Ness Investment Corp. v. United States Dept. of Agric.,* 512 F.2d 706 (9th Cir. 1975): "Where consideration of the language, purpose and history of a statute indicate that action taken thereunder has been committed to agency discretion: (1) a federal court has jurisdiction to review agency action for abuse of discretion when the alleged abuse of discretion involves violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions; (2) but a federal court does not have jurisdiction to review agency action for abuse of discretion when the alleged abuse of discretion consists only of the making informed judgment by the agency." 512 F.2d at 715. The foregoing was quoted with approval in *Strickland v. Morton,* 519 F.2d 467, 471 (9th Cir. 1975). Such classification, in a sense, was presaged by this court in *Scanwell Laboratories, Inc. v. Shaffer,* 137 U.S.App.D.C. 371, 424 F.2d 859 (1970): "In the current case the questions presented go precisely to the legality of the administrative action; the courts are more 'peculiarly competent' to decide such questions than anyone else." 424 F.2d at 875.

9. *Peoples v. United States Dept. of Agric.,* 138 U.S.App.D.C. 291, 427 F.2d 561 (1970); *Reece v. United States,* 455 F.2d 240 (9th Cir. 1972).

10. In *Duesing v. Udall, supra,* Judge Leventhal, confronted by a parallel problem stated for this court: "We reject the argument that in answer-

ing the question, to lease or not to lease, the Secretary must ignore the primary objectives of holding and using the land and consider solely the purpose of the lease. This tail wags dog construction is not put forward as supported by legislative history and we see no warrant for overturning what is at least a reasonable administrative construction." 350 F.2d at 751.

11. See *Sierra Club v. Morton,* 169 U.S.App.D.C. 20, 514 F.2d 856, *reversed sub nom. Kleppe v. Sierra Club,* —— U.S. ——, 96 S.Ct. 2718, 49 L.Ed.2d ——, *sub nom. Frizzel v. Morton,* 423 U.S. 1047, 96 S.Ct. 772, 46 L.Ed.2d 635, (1976). (*Sierra Club II.*)

12. Cf. *Puget Sound Traffic Ass'n v. CAB,* 175 U.S.App.D.C. 400, 536 F.2d 437 (1976); *Buckeye Cablevision, Inc. v. United States,* 438 F.2d 948 (6th Cir. 1971).

13. See also *Hunter v. Morton, supra; Albrechtsen v. Morton,* C–392–73 (D.Ut. March 30, 1976); *Goodwin v. Andrus, supra;* and *American Nuclear Corp. v. Morton,* No. C–74–42 (D.Wyo. Feb. 26, 1975) in which the respective courts accepted, *sub silentio,* jurisdiction and standing to consider the validity of Order No. 2952.

way [altering] the Secretary's substantive authority under Section 2(b) of the Mineral Leasing Act," or as a mandate from Congress "to change the inconsistent mineral policy of the Interior Department to one of development," as appellant claims, it appears equally consistent with the suspension of the acceptance and issuance of coal prospecting permits until an improved system could be worked out to better meet and reconcile its objectives.[14]

We have referred to the new Coal Mining and Operating Regulations and their supporting environmental impact statement[15] merely as developmental underscoring of our assumption that we are not confronted with permanent termination of coal prospecting on public lands, as some of the appellant's arguments appear to assume, and that the expressed purpose of the suspension, "for a more 'orderly' development of coal resources upon the public lands . . . with a proper regard for the protection of the environment", was not an idle recitation. Again, as suggested at the outset, however, we note that the procedural regularity, merits, and validity of the new agency action are not at issue before this court and we express no opinion concerning

them. We do hold that the suspension of the issuance of prospecting permits in the meantime, and the rejection of pending applications on the basis of such suspension, did not constitute an abuse of discretion granted the Secretary by the Mineral Leasing Act of 1920 in the light of the Mining and Minerals Policy Act of 1970.[16]

## ENVIRONMENTAL IMPACT STATEMENT

Viewed in similar perspective, the NEPA issue is hardly substantial. Whatever problem might have arisen had the discontinuance of coal leasing and prospecting been disjointed and permanent[17] fades in light of the comprehensive developmental and environmental objectives implicit in Order No. 2952, now confirmed by the issuance of the new regulations. Only through the latter kind of program could the environmental concerns expressed by the appellant have been fully considered and balanced by other related factors without fragmentation or unproductive delay, and free from encumbrance as to which we already have taken occasion to comment.[18]

■■■ As a general rule, the finding that a given action is not a "major federal ac-

---

**14.** These are stated in general terms to be: "The development of economically sound and stable domestic mining . . . industries, the orderly and economic development of domestic mineral resources, reserves . . . to help assure satisfaction of industrial, security and environmental needs, . . . research . . . to promote the wise and efficient use of our natural and reclaimable mineral resources, and the study and development of methods . . . to lessen any adverse impact of mineral extraction and processing upon the physical environment". 30 U.S.C. § 21a (1970).

**15.** See note 1 *supra.*

**16.** The order has been considered by several other courts, none of which has found the issuance of the order to be an abuse of discretion. *Hunter v. Morton, supra; Albrechtsen v. Morton, supra; Goodwin v. Andrus, supra,* and *American Nuclear Corp. v. Morton, supra.* Although in a somewhat different context, the order also has been before this court previously. In *Sierra Club II, supra,* this court in different context looked with favor upon the use by the Secretary of the order for a pause to afford opportunity, among other things, for considera-

tion of the Mining and Minerals Policy Act. We also consider *Duesing v. Udall, supra,* persuasive in principle.

**17.** The appellant's statement of the environmental impact to be apprehended seems incongruous with the temporary nature of the suspension, if not overdrawn in view of the fact that coal prospecting permits were not to be granted for lands which were known to contain coal, and there would be discovery and production factors and their timing to be considered. He states, among other things: "The complete elimination of coal prospecting on public lands which . . . contain the vast majority of low-sulphur coal, may well result in a shortage of low-sulphur coal and an increase in air pollution of metropolitan areas. . . . The alternative to expanded utilization of coal . . . would appear to be power shortage and industrial shutdowns which have their own serious 'human' environmental impacts. . . ." Appellant's brief at p. 8.

**18.** See *Sierra Club II, supra,* where this court stated:
"The Secretary . . . has shown concern over developing the coal reserves . . . in

tion" requiring an environmental impact statement should be supported by the administrator's reasoning.[19] There may, however, be exceptional instances where the fair implication of the situation plainly indicates why an environmental impact statement was not needed. We need not decide whether this is such a case, for in view of the events *subsequent* to the issuance of Order 2952, it would clearly be purposeless to now require the Secretary to justify his initial determination.

Accordingly, the judgment of the district court is

*Affirmed.*

---

a responsible manner consistent with NEPA. . . . In addition . . . the Secretary was also concerned about national development of a coal-leasing policy. . . . [S]o long as the suspension stays in effect, irretrievable commitments are largely being avoided while appellees determine the scope of the proposed federal action" 514 F.2d at 862–64, 881.

**19.** *See Arizona Public Service Co. v. FPC,* 157 U.S.App.D.C. 272, 279, 483 F.2d 1275, 1282 (1973); *Scientists' Institute for Public Information, Inc. v. AEC,* 156 U.S.App.D.C. 395, 481 F.2d 1079 (1973); *Hanly v. Kleindienst,* 471 F.2d 823 (2d Cir. 1972), *cert. denied,* 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973). *See also, e. g., Fund for Animals v. Frizzell,* 174 U.S.App.D.C. 130, 530 F.2d 982 (1975); *City of Davis v. Coleman,* 521 F.2d 661 (9th Cir. 1975); *Maryland-National Capital Park and Planning Commission v. United States Postal Service,* 159 U.S.App.D.C. 158, 487 F.2d 1029 (1973). *Cf. Greater Boston Television Corp. v. FCC,* 143 U.S.App.D.C. 383, 444 F.2d 841 (1971).