**SUWANNEE STEAMSHIP COMPANY**

v.

**UNITED STATES.**

**C.D. 4708; Court No. 70-2603-1277.**

United States Customs Court.

July 18, 1977.

---

14. The errors categorized in 5 U.S.C. § 706 are couched in the disjunctive. *O–J Transport Co. v. U. S.*, 536 F.2d 126 (6th Cir. 1976).

Toole, Taylor, Moseley & Milton, Jacksonville, Fla. (James F. Moseley, Jacksonville, Fla., of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (Edmund F. Schmidt, New York City, trial atty.), for defendant.

RE, Chief Judge:

Plaintiff steamship company brought this action to recover customs duties paid on certain repairs made in foreign ports to the "S.S. Volusia." It maintains that the duties should have been remitted by the Secretary of the Treasury because the foreign repairs were the result of a casualty.

Contending that there is no genuine issue of fact which requires a trial, the defendant has moved for summary judgment pursuant to Rule 8.2 of the rules of this court. Since plaintiff did not controvert the facts stated in the defendant's motion for summary judgment, those facts are deemed admitted under Rule 8.2(b). *See Mobilite, Inc. v. United States,* 70 Cust.Ct. 359, C.R.D. 73–11 (1973).

In 1968, the plaintiff was the operator of the "S.S. Volusia." In January and March of that year, on a voyage from Morocco to Norfolk, Virginia, the Volusia encountered heavy seas, requiring the use of salt water for ballast in the vessel's fresh water tanks. While in Norfolk, the failure of the vessel's chief engineer to flush the salt water from the tanks, as he had been instructed, caused the contamination of the fresh water taken on board while the vessel was in port. On the vessel's subsequent voyage, from Norfolk to South Africa, this contaminated water salted both boilers and necessitated repairs. The repairs were made in Port of Spain, Trinidad in April 1968, and in Capetown, South Africa in June 1968.

Pursuant to the provisions of section 466 of the Tariff Act of 1930, 19 U.S.C. § 257, duties of 50 per centum ad valorem were assessed on the cost of these foreign repairs. Plaintiff sought remission of these duties under section 466 of the Tariff Act of 1930, 19 U.S.C. § 258, from the regional commissioner of customs in Miami, Florida. The application for remission was denied on the ground that the ultimate cause of the repairs, i. e., the taking on of salt water, and the failure to flush the tanks while in port, did not occur on the same voyage as the repairs. Plaintiff paid the assessed duties, and thereafter brought this action for their recovery.

The relevant statutory provisions are sections 257 and 258 of Title 19 of the United States Code, as written prior to January 5, 1971.[1] Duties on the Volusia's repairs were assessed pursuant to section 257, which provides in pertinent part:

"§ 257. Duty on equipments or repair parts for Vessels.

The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country; * * *"

The plaintiff's application for remission of the duties paid was made under section 258, providing in pertinent part:

"§ 258. Remission for necessary repairs.

If the owner or master of such vessel furnishes good and sufficient evidence—

(1) That such vessel, while in the regular course of her voyage, was compelled, by stress of weather or other casualty, to put into such foreign port and purchase such equipments, or make such repairs, to secure the safety and seaworthiness of the vessel to enable her to reach her port of destination; * * *

* * * * * *

then the Secretary of the Treasury is authorized to remit or refund such duties, * * *"

The defendant previously moved to dismiss this action asserting that the court lacked jurisdiction. It contended that the statutory authority conferred upon the Secretary of the Treasury to remit repair duties was entirely discretionary, and that the exercise of that discretion was final and not subject to judicial review. In part, the contention was based upon section 701(a)(2) of the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), which provides:

"Chapter 7—Judicial Review

§ 701. Application; definitions.

(a) This chapter applies, according to the provisions thereof, except to the extent that—

* * * * * *

(2) agency action is committed to agency discretion by law."

This court held that the contention was without merit. *Suwannee Steamship Company v. United States,* 354 F.Supp. 1361, 70 Cust.Ct. 327, C.R.D. 73–3 (1973). Clearly, defendant overlooked the strong presumption in favor of judicial review of administrative action. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). *Cf. Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The Supreme Court has left no doubt that "[i]ndeed, judicial review of such administrative action is the rule, and nonreviewability an exception which must be demonstrated." *Barlow v. Collins,* 397 U.S. 159, 166, 90 S.Ct. 832, 838, 25 L.Ed.2d 192 (1970). *See also Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); K. Davis, *Administrative Law of the Seventies* §§ 28.16—28.16–1 at pp. 638–41 (1976) and Saferstein, *Nonreviewability: A Functional Analysis of "Committed to Agency Discretion."* 82 Harv.L.Rev. 367 (1968).

Furthermore, since statutes are to be read *pari materia,* the defendant's assertion, that the Secretary's exercise of discretion was judicially unreviewable, ignored the mandate of section 706(2)(A) of the A.P.A., 5 U.S.C. § 706(2)(A), which provides:

"§ 706. Scope of Review.

To the extent necessary to decision and when presented, the reviewing court shall

---

1. P.L. 91–654, 84 Stat. 1944, substantially amended these two sections effective January 5, 1971. The amended statute is now codified at 19 U.S.C. § 1466.

decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

* * * * * *

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, *an abuse of discretion,* or otherwise not in accordance with law; * * *." (Emphasis added.)

If all agency action dependent upon the exercise of delegated discretionary authority were immune from judicial review, section 706(2)(A) of the A.P.A. would be useless and meaningless.

In the effort to give effect to both provisions of the A.P.A., an increasing number of federal courts have granted a limited scope of judicial review to assure that administrators act reasonably, and do not abuse the discretion delegated by the Congress. *See, e. g., Krueger v. Morton,* 176 U.S.App.D.C. 233, 539 F.2d 235 (1976); *Ortega v. Weinberger,* 516 F.2d 1005 (5th Cir. 1975); *Reece v. United States,* 455 F.2d 240 (9th Cir. 1972); *Littell v. Morton,* 445 F.2d 1207 (4th Cir. 1971); *Cappadora v. Celebrezze,* 356 F.2d 1 (2d Cir. 1966). These courts have determined that—

"the reviewing court * * * has the power to ensure that the [administrative decision] is not wholly dependent upon the personal will of the administrator." B. Schwartz, *Administrative Law* § 216 at p. 608 (1976).

This court denied the defendant's prior motion to dismiss and held that the Secretary's discretionary authority to remit the foreign repair duties was judicially reviewable, and was bounded by the court's power to prevent action which was arbitrary, capricious or an abuse of discretion. *Suwannee Steamship Company v. United States,*

354 F.Supp. 1361, 70 Cust.Ct. 327, C.R.D. 73–3 (1973). That decision, therefore, held that judicial review was *available.* The present motion for summary judgment presents the question of the *scope* of that review.

Under section 706 of the A.P.A., which sets forth the scope of judicial review, the reviewing court is required to "hold unlawful and set aside agency action, findings, and conclusions found to be—* * * arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

█ In cases of express delegation of discretionary authority, the courts have held the scope of judicial review to be limited and narrow. Under this standard of review, it has been held that if the administrative decision is not contrary to law, and has a rational basis in fact, the courts will not substitute their discretion for that of the administrator. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

█ In situations in which the agency action is not based upon a formal record of the administrative proceedings, the reviewing court must be presented with an explanation of the reasons given by the administrator for his decision.[2] *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., supra; Camp v. Pitts,* 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *DeVito v. Shultz,* 300 F.Supp. 381 (D.D.C. 1969). In cases where the administrator's stated explanation is sufficient to enable the court to determine the reasonableness of his actions, only those reasons need be considered, and the court will not speculate on potentially reasonable alternative justifi-

---

**2.** In cases where a formal administrative record of a public adjudicatory proceeding is available, the administrator's decision must be supported by substantial evidence on the record viewed as a whole under section 706(2)(E) of

the A.P.A., 5 U.S.C. § 706(2)(E). *See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., supra; Citizens to Preserve Overton Park v. Volpe, supra.*

cations which were not raised.[3] *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., supra; Camp v. Pitts, supra.*

The Secretary of the Treasury's explanation for his refusal to remit the repair duties to the plaintiff was contained in a letter from the deputy assistant regional commissioner of customs in Miami. This letter to the plaintiff, dated December 16, 1969, gave the following explanation for the action of the customs officials:

"There is no authority for remission unless the repairs and stress of weather or casualty that led to the repairs take place during the same voyage. Since the VOL-USIA encountered heavy weather on a voyage prior to the one in which the repairs were effected, your petition therefore is denied."

Bearing in mind the judicially determined scope of review, this explanation for the administrative action may be said to raise two main questions.

The first is whether the Secretary of the Treasury's interpretation of section 466 of the Tariff Act of 1930, 19 U.S.C. § 258(1), that remission was precluded unless the cause of the damage occurred during the same voyage as the repairs, was "not in accordance with law."

The second is whether the Secretary's finding, that the cause of the damage necessitating the repairs occurred prior to the voyage when they were made, was reasonable, that is, neither "arbitrary, capricious, [nor] an abuse of discretion."

■ The first question is one of statutory interpretation and application. In administrative law, the courts have shown great deference to the interpretation given to a statute by the agency or official charged with its administration. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *N.L.R.B. v. Hearst Publications,*

*Inc.,* 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); and authorities cited in *Carr & Son, Inc. v. United States,* 347 F.Supp. 1390, 69 Cust.Ct. 78, C.D. 4377 (1972). Nevertheless, the courts will not defer to an administrative interpretation of a statute when it is inconsistent with the statutory language or the congressional purpose and intent. *See Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); *Espinoza v. Farah Mfg. Co.,* 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973); *Red Lion Broadcasting Co. v. F.C.C.,* 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). *See also* materials on "Application of Statutory Terms to Facts and Interpretation of Statutory Terms" in Gellhorn and Byse, *Administrative Law* 427 *et seq.* (6th ed. 1974).

■ A careful reading of the statute, and an examination of the legislative history of section 466, 19 U.S.C. § 258(1), amply demonstrate that the Secretary's interpretation is consistent with the legislative policy. Section 466 of the Tariff Act of 1922 contained a provision for remission of foreign repair duties identical with the one before the court. When the Tariff Act of 1930 was being enacted, the House of Representatives passed an amended version of section 466 which would have substantially increased the number of situations in which remission was permissible. Under the House revision, the Secretary was authorized to remit duties upon evidence—

"(1) That such equipment or parts thereof or repair parts or materials were purchased, or that such expenses of repairs were incurred, in a foreign country, in order to maintain such vessel in a seaworthy condition, or to repair damages suffered or to replace equipment damaged or worn out during the voyage, or to maintain such vessel in a sanitary and proper condition for the carriage of cargo or passengers; * * *." H.R. 2667, § 466 at p. 327 (passed House, May 28, 1929).

---

**3.** If the administrative explanation is insufficient to judge the reasonableness of the agency action, the matter is remanded to the adminis-

trator for a fuller and more precise statement. *See Camp v. Pitts, supra; DeVito v. Shultz, supra.*

The rationale for this revision of section 466 was stated succinctly in the Report of the House Committee on Ways and Means:

"Your committee believes that the limitations of this section [section 466 of the Tariff Act of 1922] are too strict and result in an unnecessary burden on American shipping.

The section as construed does not permit the remission or refunding of duties in the case of equipment purchased or repairs made in the ordinary course of the voyage to replace worn-out equipment or to repair minor damages or ordinary wear and tear." H.Rep.No.7, 71st Cong., 1st Sess. 171 (1929).

Clearly, the House amendment would have greatly increased the situations in which duties were to be remitted. Under the amendment, only a general overhaul or reconditioning would have been excluded from the remission allowance. *See id.*

The members of the Senate Finance Committee rejected this House amendment, and, in the bill reported to the full Senate, substituted the wording that presently appears in section 466.

Both the hearings of the Senate Committee, and the committee's final report on section 466, evidence the concern of the committee members that the House amendment would have provided insufficient protection for American shipyards, the class for whose benefit the section was originally formulated. *See Senate Hearings* on H.R. 2667, 71st Cong., 1st Sess., Vol. XVII at 537–46 (1929) [hereinafter cited as *Hearings*]; S.Rep.No.37, 71st Cong., 1st Sess. 72 (1929).

In furthering this goal of protecting American shipyards, the Senate version of section 466 did two things. First, it limited remission to relatively serious repairs: those necessary "to secure the safety and seaworthiness of the vessel to enable her to reach her port of destination." And second, it strictly defined both the nature and the timing of the cause of the damage necessitating the repairs. This was accomplished by authorizing remission only for those repairs caused "by stress of weather or other casualty," provided that the stress of weather or other casualty occurred while the vessel was "in the regular course of her voyage."

The Secretary's interpretation of section 466 effectuates these statutory objectives. The plaintiff's assertion, that this interpretation of the authority to remit frustrates congressional intent by unfairly penalizing shipowners, was answered by several members of the Senate Committee. The Secretary's interpretation was seen as giving maximum protection to American shipyards, while at the same time costing American shipowners no more for foreign repairs than they would pay at home due to lower labor and equipment costs in foreign ports. *See Hearings, supra* at 539–40 (remarks of Senator Couzens); *id.* at 544 (remarks of Senator Sackett). The committee report indicates that the Senate version of section 466 still provided "generous" treatment to American shipowners, because the repair duty merely equalized the cost of foreign and domestic repairs. *See* S.Rep. No.37, 71st Cong., 1st Sess. at 72 (1929).

In light of the legislative history, which shows a congressional intent to formulate a narrow and strict remission provision to protect American shipyards, the court concludes that the Secretary's interpretation of section 466, 19 U.S.C. § 258(1), is in furtherance of the legislative purpose, and therefore "in accordance with law."

■ The second question presented is whether the Secretary's finding, that the cause of the damage necessitating the repairs occurred on a prior voyage, is a reasonable one which ought not to be judicially disturbed. This inquiry deals with a review of the exercise of administrative discretion based upon an evaluation of all the salient facts, including administrative experience. The scope of judicial review of this expressly delegated administrative discretion is more restricted and circumscribed than in the performance of the judicial function in the interpretation and application of the statutory mandate. *See Barlow v. Collins,* 397 U.S. 159, 166, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970); *Texas Gas Transmission Corp. v. Shell Oil Co.,* 363 U.S. 263,

268–70, 80 S.Ct. 1122, 1126–27, 4 L.Ed.2d 1208 (1960). *See also Gray v. Powell,* 314 U.S. 402, 411, 62 S.Ct. 326, 332, 86 L.Ed. 301 (1941).

Indeed, respected judicial authority teaches that the administrator's decision must stand unless the reviewing court finds that it was—

"made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group, or in Judge Learned Hand's words, on other 'considerations that Congress could not have intended to make relevant.'" *Wong Wing Hang v. Immigration and Naturalization Service,* 360 F.2d 715, 719 (2d Cir. 1966).

█ No such finding can be made in this case. On the contrary, at least two specific reasons have been stated to sustain the Secretary's determination.

First, the Secretary determined that the ultimate cause for the salting of the vessel's boilers was the taking on of salt water for ballast during the prior voyage from Morocco to Norfolk. This was coupled with the failure of the vessel's chief engineer to flush the salt water from the tanks in Norfolk, as instructed. In its complaint, and by its failure to file an opposing statement, the plaintiff has admitted these facts or events. In concluding that the taking on of salt water, and the subsequent failure to flush it out before adding fresh water, ultimately caused the damage, the Secretary acted well within his discretionary authority under section 466, 19 U.S.C. § 258(1). Since plaintiff has offered no other cause or explanation, one cannot quarrel with the reasonableness of the Secretary's finding. Hence, since both of these events occurred prior to the voyage from Norfolk to South Africa, when the repairs were made, the Secretary acted reasonably in refusing to remit the repair duties.

Second, the Secretary had a reasonable basis for concluding that, within the meaning of section 466, 19 U.S.C. § 258(1), no "casualty," occurred on the vessel's voyage from Norfolk to South Africa. In *Dollar Steamship Lines, Inc. v. United States,* 5 Cust.Ct. 23, 28–29, C.D. 362 (1940), this court indicated that—

"the word 'casualty' is to be considered together with the phrase 'stress of weather.' The phrase 'or other casualty' is supplemental to and qualifies the phrase 'stress of weather' broadening the term to include other similar casualties. * * A casualty similar to 'stress of weather' would include such as is violently exerted; that which comes with unexpected force or violence, such as that of a fire, or a collision, or an explosion.

We are of the opinion that a casualty similar to 'stress of weather' should be of necessity a happening that comes with the violence of the turbulent forces of nature."

In *International Navigation Co., Inc. v. United States,* 148 F.Supp. 448, 38 Cust.Ct. 5, 11, C.D. 1836 (1957), after reaffirming the analysis of the term "casualty" in the *Dollar Steamship* case, this court explained further:

"It is evident that under the provision as enacted it was not intended that duties should be remitted in all cases where repairs were made because of damages suffered or equipment damaged or worn out during the course of a voyage, even though such repairs were necessary to maintain the vessel in a seaworthy condition. It was only where the damage occurred by reason of some serious or extraordinary event, described as 'stress of weather or other casualty,' that remission was permitted."

The evidence presented to the Secretary failed to establish that the salting of the vessel's boilers occurred "with the violence of the turbulent forces of nature," or from any analogous circumstance. Rather, it is plain that the damage was directly attributable to the negligence of the vessel's chief engineer in failing to flush the fresh water

tanks in Norfolk. It was reasonable for the Secretary to conclude that this negligence did not justify remission under the statute.

In view of the foregoing, it is the determination of this court that the Secretary of the Treasury acted reasonably, and did not abuse his discretion by refusing to remit the duties paid on the foreign repairs to the S.S. Volusia. Since the administrative action under review was not shown to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the defendant's motion for summary judgment is granted.

Judgment will be entered accordingly.