Ray H. **ALBRECHTSEN and Mountain States Resources Corporation,** Plaintiffs-Appellees,

v.

Cecil **ANDRUS, Secretary of the Interior, Defendant-Appellant.**

No. 76–1552.

United States Court of Appeals, Tenth Circuit.

Argued Sept. 27, 1977.

Decided Feb. 15, 1978.

Michael R. Carlston, Salt Lake City, Utah (Reed L. Martineau and Craig S. Cook of Worsley, Snow & Christensen, Salt Lake City, Utah, on the brief), for plaintiffs-appellees.

Glen R. Goodsell, Atty., Dept. of Justice, Washington, D. C. (Peter R. Taft, Asst. Atty. Gen., Washington, D. C., Ramon M. Child, U. S. Atty., Brent Ward, Asst. U. S. Atty., Salt Lake City, Utah, and Raymond N. Zagone and Jacques B. Gelin, Attys., Dept. of Justice, Washington, D. C., on the brief), for defendant-appellant.

Before McWILLIAMS, BREITENSTEIN and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is an appeal by the Secretary of the Interior from a judgment of the trial court directing the Secretary to reinstate certain applications for coal prospecting permits which had previously been rejected by the Secretary under the Mineral Leasing Act of 1920, as amended, 30 U.S.C. § 201(b).

In 1968, Ray H. Albrechtsen filed five applications for coal prospecting permits with the Department of the Interior, the applications covering some 12,885 acres of land in the State of Utah. On July 10, 1968, application U–5139 was rejected in its entirety by the Land Office of the Bureau of Land Management (BLM). On July 16, 1968, applications U–5140, U–5141 and U–5142 were rejected, in part, with the further provision that other portions of the applications "may be allowed" on the condition of receipt of a bond with approved surety and the execution of certain stipulations. On May 7, 1970, application U–6190 was also rejected, in part, with the same provision that other portions of the application "may be allowed" upon meeting certain conditions.

Each decision by the BLM relating to Albrechtsen's five applications notified Albrechtsen of his right to appeal as follows:

Thirty days from receipt of this decision are allowed in which to meet the require-

ments above indicated or appeal to the Director, Bureau of Land Management. If no action is taken within the time allowed, the case will be closed on the records of this office, as to the available lands, without further notice.

Albrechtsen made a timely appeal from the decisions of the BLM concerning his five applications. In each instance the Director of BLM affirmed the decisions of the Land Office, and granted the right of further appeal to the Secretary. Such further appeals were made, and were pending, when the Secretary issued Order No. 2952, which provided for a moratorium in the issuance of coal prospecting permits. Order No. 2952 reads as follows:

In the exercise of my discretionary authority under section 2(b) of the Mineral Leasing Act, as amended (30 U.S.C. § 201(b)), I have decided not to issue prospecting permits for coal under that section until further notice and to reject pending applications for such permits in order to allow the preparation of a program for the more orderly development of coal resources upon the public lands of the United States under the Mineral Leasing Act, with proper regard for the protection of the environment.

Accordingly, no prospecting permits for coal under Section 2(b) of the Mineral Leasing Act, *supra*, shall be issued until further notice. All pending applications for such permits shall be rejected, and any applications submitted in the future shall be promptly rejected.

Nothing in this memorandum shall be deemed to restrict the rights of holders of prospecting permits, issued prior to this directive, to obtain preference right coal leases under section 2(b), *supra*, or to prevent the issuance of competitive coal leases under section 2(a) of the Mineral Leasing Act, as amended (30 U.S.C. § 201(a)).

I have determined that the issuance of this order is not such a major Federal action significantly affecting the quality of the human environment as to require the preparation of an environmental im-

pact statement under section 102(2)(C) of the National Environmental Policy Act of 1969 (42 U.S.C. § 4332(2)(C)).

The Secretary, acting through the Board of Land Appeals, later rejected all of Albrechtsen's applications, basing his rejection on the aforesaid Order No. 2952.

Albrechtsen instituted the present action against the Secretary, seeking to have his several applications reinstated. The gist of the complaint was that the notice of appeal given him by the BLM was ambiguous and misleading, and that he did not realize that he could have appealed from that portion of a decision which rejected his application, and at the same time could have gone forward and complied with the conditions imposed in connection with the parts of his application which the BLM had indicated "may be approved" when certain conditions were met. By amended complaint, Albrechtsen alleged that he had also been misled by BLM officials who had verbally advised him that he could not appeal part of the BLM's decision, and at the same time comply with the conditions imposed by another part of the BLM's decision. By answer, the Secretary denied that the BLM's notice of appeal was itself misleading or that BLM officials had given Albrechtsen incorrect information concerning his right of appeal.

After trial, the trial judge ruled in favor of Albrechtsen and against the Secretary. Specifically, the trial court found that the written notice of appeal was ambiguous, and that because of such ambiguity Albrechtsen sought clarification from the BLM and was incorrectly informed by BLM officials that he could not accept, immediately, the favorable portion of the BLM decision and at the same time appeal the unfavorable portions of such decisions. Based apparently on some sort of estoppel, the trial court ordered the Secretary to reinstate Albrechtsen's applications. As to those parts of the applications to which conditions had been attached, the trial court directed that Albrechtsen be given 30 days to meet such conditions and the Secretary was restrained from refusing to issue such

permits for any reason except a failure by Albrechtsen to comply with the specific requirements contained in the BLM decisions. Further, in connection with Order No. 2952, the Secretary was ordered to make a proper determination, supported by adequate administrative record, as to whether, under the National Environmental Policy Act, the Secretary need prepare an Environmental Impact Statement, or in lieu thereof, a negative declaration. The Secretary now appeals the judgment entered against him.

On appeal, there are basically two issues: (1) Whether the trial court erred in ordering the Secretary to reinstate Albrechtsen's applications on the basis of estoppel; and (2) whether the trial court erred in directing the Secretary to make an administrative record, as to the applicability of the National Environmental Policy Act to Order No. 2952. Our study of the matter leads us to conclude that the trial court erred in both particulars, and we therefore reverse, with directions that judgment be entered in favor of the Secretary.

The starting point in our discussion of the matter is *Hunter v. Morton*, 529 F.2d 645 (10th Cir. 1976), which has considerable pertinency to the present controversy. In *Hunter*, three applications for coal prospecting permits were rejected, in part, and as to the remaining portions of the applications the decision in each instance stated that said portion of the application "may be allowed" on the meeting of certain conditions. The written notice of appeal in each of these three decisions was identical to the notice of appeal given Albrechtsen in the instant case. In *Hunter*, the applicant filed his appeal, and the director of the BLM affirmed. Appeal was then made to the Secretary acting through the Board of Land Appeals. The appeals in *Hunter*, like the appeals in the instant case, were pending before the Secretary when the latter issued Order No. 2952. In *Hunter*, the Secretary rejected the appeals on the basis of Order No. 2952. Hunter, the applicant, then brought suit against the Secretary, seeking issuance of the permits applied for, particularly as to those portions of the applications which had not been rejected.

The grounds relied on by the applicant in *Hunter* were: (1) That the written notice of appeal set forth in the BLM's decisions was so unclear and ambiguous as to deny the applicant due process; (2) that the BLM under the circumstances is estopped; and (3) that Order No. 2952 is invalid because of noncompliance with the National Environmental Policy Act.

The trial court in *Hunter* granted the Secretary's motion for summary judgment. On appeal, we affirmed, holding that the written notice concerning appeal contained in the decision of the BLM, though not a model of clarity, was nonetheless adequate to apprise the applicant of his appeal rights. We then went on to hold that the doctrine of estoppel could not be applied against the Secretary and that the National Environmental Policy Act did not require the Secretary to file either an impact statement or a negative impact statement before issuing Order No. 2952.

Our decision in *Hunter* was announced while the instant case was pending in the trial court. In an apparent effort to escape the rule of *Hunter*, Albrechtsen then filed in the instant case an amended complaint and attempted, at trial, to make out a different and stronger case for both estoppel and noncompliance with the National Environmental Policy Act. The trial court, on the basis of such showing, was of the view that the instant case was distinguishable from *Hunter*. We do not agree, and, in our view, the present controversy is largely governed by what we said in *Hunter*.

■ The evidence that BLM officials gave incorrect information to Albrechtsen concerning his appeal rights, thereby invoking the doctrine of estoppel against the Secretary, is in our view woefully weak. There was only the uncorroborated, self-serving testimony of Albrechtsen himself. Albrechtsen did call as his own witnesses, two officials of the BLM. The offered testimony concerning BLM practices and procedures, but neither corroborated Albrechtsen's testimony that he had been told by the BLM that he could not appeal the rejected

part of his applications, and at the same time go forward on those portions of his applications that "may be allowed" if certain conditions were met. In this general regard, it should be noted that in *Hunter* we said that the written notice in the BLM decision concerning an applicant's appeal rights was sufficient to advise the applicant to take some action as to acreage not rejected if he wanted to move toward a perfected application. In the instant case, Albrechtsen received the same notice concerning his appeal rights as did the applicant in *Hunter*. Albrechtsen would escape the effect of such notice by his uncorroborated testimony that he was given contrary information by some BLM representative. Paraphrasing what we said in *Hunter*, we do not say that the doctrine of estoppel can never be applied against the Secretary, even when it relates to public lands, nevertheless "the facts here advanced do not come close to the requirements which should be imposed." *Id.* at 649.

In *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), an agent of the Federal Crop Insurance Corporation gave some incorrect information to a wheat grower concerning the extent of his crop insurance coverage, which information was contrary to a federal regulation. The wheat grower suffered a crop failure, and the question was whether the wheat grower was entitled only to the limited coverage afforded by the regulation or to the expanded coverage promised by the local agent. In holding that the incorrect information given by the local agent was not binding on the United States, the Supreme Court declared as follows:

> Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.

In *Atlantic Richfield Co. v. Hickel*, 432 F.2d 587, 591–92 (10th Cir. 1970), we recognized the rule which states that the doctrine of equitable estoppel binds the Government for conduct of its agents while they are acting within the scope of their employment. However, in that same case we went on to state that "a corollary to the rule is the established principle that the United States may not be estopped from asserting a lawful claim by the erroneous or unauthorized actions or statements of its agents or employees, nor may the rights of the United States be waived by unauthorized agents' acts." *Id.*

It is to be noted that we are here concerned with applications for coal prospecting permits on federal lands, in which the nation as a whole has an interest. In *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791 (1917), the Supreme Court stated that as a general rule laches or neglect of duty on the part of officials of the Government is no defense to a suit to enforce a public right or to protect a public interest. Similarly, in *Montana Power Co. v. Federal Power Commission*, 87 U.S.App.D.C. 316, 322, 185 F.2d 491, 497 (1950), the Court of Appeals for the District of Columbia held that the acceptance by the Government of rentals from the assignee of a nonassignable permit did not estop the Government from asserting its title to the land nor did it bar the Government from requiring the assignee to conform to applicable statutes and regulations. In so holding, the Court of Appeals observed:

> The Government is too vast, its operations too varied and intricate, to put it to the risk of losing that which it holds for the nation as a whole because of the oversight of subordinate officials. *Id.*

Based on the foregoing authority, and indeed on our own holding in *Hunter*, we conclude that the trial court erred in invoking the doctrine of estoppel against the Secretary.

In the final paragraph of Order No. 2952, as set forth at the outset of this opinion, the Secretary disclosed that he had determined that his issuance of the order was not such a major federal action significantly affecting the quality of the human environment as to require the preparation of an environmental impact statement under section 102(2)(C) of the National Environmental Policy Act of 1969, 42 U.S.C. § 4332(2)(C). In the trial court, Albrechtsen claimed that, in issuing Order No. 2952, the Secretary had not complied with the National Environmental Policy Act, and that, accordingly, Order No. 2952 was invalid. Such being the case, Albrechtsen argues that his appeals to the Secretary could not be rejected on the basis of Order No. 2952, and should have been evaluated in the light of the Secretary's discretionary power to grant applications for coal prospecting permits. As above indicated, the trial court by its order and judgment did direct the Secretary to, in effect, conduct a further administrative hearing "to determine the applicability or nonapplicability of the National Environmental Policy Act." In so doing, the trial court also committed error.

In *Hunter* we clearly indicated that Order No. 2952 was not invalid because of the fact that the Secretary did not file an impact statement. In this regard, our pronouncement in *Hunter* controls here. The very purpose of Order No. 2952 was to cease, for the time being, the issuance of coal prospecting permits in order to allow the preparation of a program for the orderly development of coal resources upon public lands "with proper regard for the protection of the environment." Implicit in Order No. 2952 is that in due time the Secretary would promulgate a new program permitting the orderly development of coal resources on public lands which at the same time would recognize and minimize environmental problems. Such new regulations, 41 Fed.Reg. 2052, did in fact issue on May 17, 1976, and are to be a new sub-part to 43 C.F.R. 3040, and a final environmental impact statement was filed in connection with such new regulation. In such circumstances it would be clearly purposeless to now require the Secretary to justify his initial determination. Such was the holding in *Krueger v. Morton*, 176 U.S.App.D.C. 233, 239, 539 F.2d 235, 241 (1976), to which we subscribe.

Judgment reversed and cause remanded with directions that the trial court dismiss the action and enter judgment for the Secretary.