**PEABODY COAL COMPANY, a Delaware Corporation, Plaintiff,**

v.

**Cecil D. ANDRUS, Secretary of the Interior, Guy Martin, Assistant Secretary, Land and Water Resources, Department of the Interior, Frank Gregg, Director, Bureau of Land Management, Department of the Interior, and the United States Department of the Interior, Defendants.**

No. C78–161K.

United States District Court,
D. Wyoming.

Sept. 19, 1979.

Stanley K. Hathaway and Brent R. Kunz, Cheyenne, Wyo., for plaintiff Peabody Coal Co.

Toshiro Suyematsu, Asst. U. S. Atty., Cheyenne, Wyo., and Gerald S. Fish, Dept. of Justice, Washington, D. C., for defendants Cecil D. Andrus, et al.

## ORDER REVERSING DECISION OF INTERIOR BOARD OF LAND APPEALS

KERR, Senior District Judge.

This is a review of a decision of the Interior Board of Land Appeals. The facts are not in dispute but are complex.

Between June 1, 1970 and December 1, 1970, in accordance with the provisions of Section 2 of the Mineral Leasing Act of 1920, as amended, 30 U.S.C. § 201 (1970), the Department of the Interior issued coal prospecting permits W–13800, W–13801, W–14277, W–20057, W–21119, W–24984 and W–24985. Each permit was issued for a term of two years from its effective date. Within the two-year life of each of the seven prospecting permits, an application for a two year extension of the permit was filed pursuant to 43 C.F.R. 3511.3–1 as then written.

Section 2(b) of the Mineral Leasing Act of 1920, as amended, 30 U.S.C. § 201(b) provides in pertinent part as follows:

> Any coal prospecting permit . . . may be extended by the Secretary for a period of two years, if he shall find that the permittee has been unable, with the exercise of reasonable diligence to determine the existence or workability of coal deposits in the area covered by the permit and desires to prosecute further prospecting or exploration, or for other reasons in the opinion of the Secretary warranting such extension.

No immediate action was taken by the Interior Department to approve or disapprove these permit extensions.

Prior to the year 1972, permits to prospect for coal and extensions of these permits were granted pro forma almost without exception by the Department of Interior. Many of these prospecting permits ripened into preference right leases and it was the policy of the Interior Department to award such leases when commercial quantities of coal were discovered on the public lands.

In 1969 the National Environmental Protection Act (NEPA) was passed. At or near that same time, Congress began to express dissatisfaction with the way the Mineral Leasing Act was administered with respect to coal. These two factors led to an informal undisclosed moratorium on coal prospecting permits, extensions, etc., by the Department of the Interior beginning in 1971.

In 1973 the Secretary issued Secretarial Order No. 2952, February 13, 1973, which suspended issuance of prospecting permits and rejected pending application for such permits. Order No. 2952 did not purport to affect permits previously issued and expressly provided that nothing therein should "be deemed to restrict the rights of holders of prospecting permits issued prior to this directive to obtain preference right coal leases under section 2(b)."

Also, the Interior Department in a departmental memorandum by the Acting Associate Solicitor, Division of Public Lands, June 7, 1973, concluded that approval of pending applications for extension of coal prospecting permits were legally permissible and the intent of the order was that they were to be extended:

Secretarial Order No. 2952 does not bar the granting of an extension to a coal prospecting permit. Order No. 2952 bars two discretionary actions, i. e., the issuance of new prospecting permits and the acceptance of applications of such permits. Order No. 2952, however, is completely silent on a third discretionary action, the granting of extensions of permittees. Although the tenor of the Sec-

retarial Order might seem to be opposed to the extension of permits, Deputy Assistant Secretary Berklund has assured me that it was intended to allow existing permits to be extended on the same basis as permits were extended prior to the Order. This is legally permissible under the Order, and Mr. Berklund's remarks settle the question of policy.

Also, on February 13, 1973, the Secretary approved a memorandum setting forth "a two-pronged coal leasing policy" consisting of a "short-term leasing program" and a "long-range program."

By memorandum of December 20, 1973, an Assistant Director of the Bureau of Land Management (BLM) stated that:

. . . Extensions of permits for coal will be given high priority when they meet the short-term criteria of the Secretary's February 17, 1973 Policy Statement.[1] Applications for extensions that do not meet that criteria will be held in abeyance pending full implementation of the coal management program pursuant to the long-range aspects of said policy."

By letter dated January 18, 1974, the Chief, Branch of Land and Mineral Operations, Wyoming State Office, advised each of the respective permittees that under the Secretary's coal leasing policy announced in February, 1973, coal leases would be issued only when coal was needed to maintain an existing operation or was needed as a reserve for production in the near future (short-term criteria) and that:

Application for extension of coal prospecting permits that do not meet one of these criteria must be held in abeyance pending full implementation of the Coal Management Program . . . ..

If you are unable to meet either criteria, your application for extension will be suspended until further notice.

In February of 1973, during the period of non-action by the agency, assignments were made to the plaintiff Peabody Coal Company of the coal prospecting permits in issue.

---

1. This reference was to the news release publicly announcing the policies set forth in the February 13, 1973 memorandum of the Secretary.

These assignments were filed with the Wyoming State Office, BLM, for approval.

By applications filed on May 22, August 8 and November 4, 1974, plaintiff sought Preference Right Leases of the lands covered by the prospecting permits. These applications were rejected by the BLM in letters dated July 3, 1974, August 9, 1974 and February 6, 1975 on the grounds that such applications were not filed prior to the expiration of the initial two-year prospecting permit. The BLM qualified this by providing that it was without prejudice to Peabody's right "to file new applications for preference right leases after extension of the prospecting permits, if such extensions are granted pursuant to the pending applications for extensions." The BLM's form on the right of appeal was also included in the letters. No appeal was taken by plaintiff from this BLM action.

New regulations promulgated by the Department of Interior on May 7, 1976 defined "commercial quantities" of coal and authorized grants of extensions of time in which to submit date required to demonstrate discovery of commercial quantities of coal on the permit lands. 43 C.F.R. 3521.1–1(a)(2).

In July 1976 Peabody filed applications for an extension of one year within which time to submit additional information regarding discovery of "commercial quantities" of coal.

In a letter dated October 21, 1976, the BLM rejected Peabody's application for an extension of one year within which time to submit additional information on the grounds that "we are not in a position to issue you extensions of time for these prospecting permits since preference right lease applications were never accepted."

On August 4, 1976 Congress enacted the Federal Coal Leasing Amendments Act of 1976 (FCLAA), 90 Stat. 1083. By that Act, Congress in effect, repealed Section 2(b) of the Mineral Leasing Act in its entirety, subject to "valid existing rights." It adopted a totally new way for the exploration and development of coal resources on federal lands.

On November 17, 1976 Peabody filed an appeal to the Interior Board of Land Appeals (IBLA). The IBLA decision was rendered on March 10, 1978, Peabody Coal Company, 34 IBLA 139.

The IBLA held that the BLM's 1974 and 1975 letter decisions rejecting Peabody's preference right lease applications were final for want of timely appeal. Therefore, there were no pending preference right lease applications in existence subject to the extension of time under 43 C.F.R. 3521.1–1(a)(2). Notwithstanding, the IBLA reviewed the question of the Secretary's authority to withhold action on Peabody's applications for extension of prospecting permits and the effect of the FCLAA on such applications.

The IBLA held that (1) the Department of Interior was authorized to exercise discretion under Section 17 of the Mineral Leasing Act to withhold action on Peabody's extension application, and (2) inasmuch as such applications are dependent upon an exercise of administrative discretion, they are not "valid existing rights" within the savings clause of the FCLAA and, therefore, the Department had no authority after the effective date of the Act (August 4, 1976) to extend prospecting permits.

In April 1978 the Wyoming State Office (BLM) returned to plaintiff the unapproved permit assignments which had been pending since February, 1973. The BLM stated that, in light of the March 10, 1978 decision of the IBLA, the FCLAA terminated the Secretary's authority to extend outstanding coal prospecting permits. The BLM had terminated the applications for extension of the permits and it was unable to approve assignments of the expired or terminated permits. At the same time, the state office advised the permittees of record that the permits had been terminated and that refunds of payments submitted with the applications for extension would be made.

This action was appealed to the IBLA. By the decision of August 14, 1978, Peabody Coal Company, 36 IBLA 242, the Board dismissed the appeal on the grounds that

the "action of BLM was merely a ministerial interpretation of [the] Board's holding" and the issues raised on appeal were res judicata of the Board's earlier decision.

The agency delay disclosed by the record is inexcusable. In light of that delay, the Government's position that Peabody Coal has no "valid existing rights" under the savings clause of the FCLAA becomes untenable. The Government's acts were arbitrary and capricious in failing to approve plaintiff's 1972 applications for permit extensions prior to the 1976 enactment of the FCLAA and it would be inconsistent with basic principles of fairness to allow the Government to prevail in these circumstances.

The decision of the Secretary of the Interior is in conflict with the settled administrative practice of the Interior Department and with the various Secretarial Orders that were issued at the time in question.

Prior to 1970, the coal leasing policy followed by the Interior Department was reliable. A party would receive a two year coal prospecting permit and, if the party complied with the statutory and regulatory requirements, the permit would be extended for two years. In most cases, the permit would ripen into a preference right coal lease. In the early 1970's, without legislative action or agency hearing or rulemaking procedures, the Interior Department began an unofficial moratorium on approving coal leasing permits, extensions, or preference right leases. It was not until 1973 that the Interior Department publicly announced that such a moratorium was in effect. Peabody Coal was given notice of such procedure in 1974 by letter from the BLM.

The 1973 Secretarial Order No. 2952 which announced this policy is clear on its effect on the rights of holders of prospecting permits. It stated that nothing therein should "be deemed to restrict the rights of holders of prospecting permits issued prior to this directive to obtain preference right coal leases under Section 2(b)."

This Departmental intent was amplified by a Departmental Memorandum of June 7, 1973 which concluded that approval of pending applications for extension of coal prospecting permits was legally permissible and the intent of the order was that they were to be extended on the same basis as permits were extended prior to the Order.

Yet the Bureau of Land Management (BLM) did not conform its acts to the above orders. By memorandum of December 1973, the Assistant Director of the BLM stated that "Extensions of permits for coal will be given high priority when they meet the short-term criteria of the Secretary's February 17, 1973 policy statement. Applications for extensions that do not meet that criteria will be held in abeyance pending full implementation of the coal management program . . . ."

At no time did the BLM indicate to plaintiff that it would reject plaintiff's application for extension of prospecting permits. On the contrary, the BLM gave every indication to plaintiff that it would grant the extensions. Plaintiff relied on that and continued from 1973 to expend substantial sums of money in exploration and development of the permits.

The BLM letter of January 1974 informed plaintiff that action on the applications for extension of prospecting permits was being suspended, subject to short-term criteria, pending implementation of a coal leasing program. Such a program, it may be noted, has yet to be implemented. There has been no leasing of Federal coal lands since 1971. There was no indication by the BLM in this letter that the extensions would be denied.

In its letters rejecting plaintiff's application for preference right leases, the BLM fostered plaintiff's reliance by including a reservation permitting the plaintiff to reapply for preference right leases upon the extension of their prospecting permits. These letters containing the reservation were not a final agency action, but were an intermediate action under 5 U.S.C. § 704.

In light of the above actions, the Secretarial Orders of 1973 and the historic practice of the Interior Department in regard to extensions and coal preference right leases,

the BLM was obligated to act on the subject extensions long before the effective date of the Act. The Interior Department relies on their discretionary authority to approve permit extensions. Such discretion is not boundless; statutes, regulations, agency procedures and agency orders all delineate the parameters of that discretion. Delay tactics have no place in that framework.

Case law in this area is scarce. Most appellate court decisions have ruled on the Secretary's authority pursuant to Order No. 2952 to reject new applications for coal prospecting permits. See, *Krueger v. Morton*, 176 U.S.App.D.C. 233, 539 F.2d 235 (D.C.Cir.1976) and *Hunter v. Morton*, 529 F.2d 645 (10th Cir. 1976). Both cases held that the Secretary did have the right to reject these new applications for permits.

A decision from this District Court, *American Nuclear Company v. Andrus*, 434 F.Supp. 1035 (D.Wyo., 1977) also held that an application for a coal prospecting permit is not "a valid existing right" under the Act. But the court went on to say:

> The only possible conclusion that can be reached, after a reading of the cases previously cited and the legislative history, is that no valid existing rights were created until at least a prospecting permit had been issued under the Mineral Leasing Act. (at 1037)

The IBLA in the recent decision, Thermal Energy Co., 36 IBLA 333 (1978), held that "if a timely application for an extension (of a prospecting permit) is filed in proper form, the base permit will not expire automatically."

From these decisions, there can be no doubt that the status of a prospecting permit is superior to that of a mere application for a permit. The facts in this case clearly show that Peabody Coal was issued prospecting permits in 1970. Within the initial permit term, Peabody complied with the terms of the permit and applied for extensions. These were not dealt with in a timely fashion by the agency. In order to preserve its property right, Peabody applied for preference right leases. These were rejected on the grounds that Peabody had no existing prospecting permits. From 1973 on, Peabody continued to expend time and money on the permit lands. Accordingly, it follows that the BLM cannot rely on its own failure to act on an application for extension of prospecting permits as grounds for rejecting coal preference right lease applications filed subsequent to expiration of the initial permit term but within two years from such expiration date. Therefore, it is held that Peabody Coal had valid existing property rights at the time of enactment of the FCLAA.

Pursuant to the authority given reviewing courts under 5 U.S.C. § 706(2) (1970), this court reverses the decisions of the IBLA in this case on the grounds that the agency action was arbitrary, capricious and an abuse of discretion.

This Court finds that plaintiff has valid existing rights in prospecting permit numbers W–13800, W–13801, W–14277, W–20057, W–21119, W–24984 and W–24985.

NOW, THEREFORE, IT IS

ORDERED that the decision of the Interior Board of Land Appeals be and the same is hereby reversed; it is

FURTHER ORDERED that Defendants' Motion for Summary Judgment be and the same is hereby denied; it is

FURTHER ORDERED that the BLM approve the assignment of the subject permits to Peabody Coal Company; it is

FURTHER ORDERED that the BLM shall grant a two-year extension of Plaintiff's prospecting permits to commence from the date of this Order and allow Plaintiff to submit evidence of "commercial quantities" of coal; it is

FURTHER ORDERED that, if there is a discovery of "commercial quantities" of coal, the BLM shall issue the coal leases.