Virgil V. PETERSON, Plaintiff,

v.

The DEPARTMENT OF the INTERIOR, and Cecil D. Andrus, Secretary of the Interior, Defendants.

HIKO BELL MINING AND OIL CO., a Utah corporation, Plaintiff,

v.

Cecil D. ANDRUS, Secretary of the Interior; Guy Martin, Assistant Secretary, Land and Water Resources, Department of the Interior; Frank Gregg, Director, Bureau of Land Management, Department of the Interior; and the United States Department of the Interior, Defendants.

Nos. C 78–463, C 78–465.

United States District Court, D. Utah, C. D.

March 23, 1981.

Harold A. Hintze, Scott R. Jenkins, Fox, Edwards & Gardiner, Salt Lake City, Utah, for plaintiff Peterson.

Gerald E. Nielson, Salt Lake City, Utah, for plaintiff Hiko Bell.

Gerald S. Fish, Dept. of Justice, Washington, D. C., Ronald L. Rencher, U. S. Atty., Wallace Boyack, Asst. U. S. Atty., Salt Lake City, Utah, for defendants.

## ORDER REVERSING DECISION OF INTERIOR BOARD OF LAND APPEALS

ALDON J. ANDERSON, Chief Judge.

This case is the consolidation of two complaints that seek review of a single decision of the Interior Board of Land Appeals (IBLA). The IBLA decision upheld the BLM's rejection of plaintiffs' applications for extension of their coal prospecting permits on the ground that plaintiffs did not have "valid existing rights" under their extension applications and that the Secretary's authority to grant extensions was terminated by section 4 of the Federal Coal Leasing Amendments Act of 1976 (FCLAA), Pub.L.No. 94–377, § 4, 90 Stat. 1085 [codified at 30 U.S.C. § 201(b)(1) (1976)]. *Virgil V. Peterson and Hiko Bell Mining and Oil Co.*, 37 I.B.L.A. 18 (Sept. 12, 1978).

The case is before the court on cross motions for summary judgment by both plaintiffs and the government. The court heard oral argument on the motions on November 10, 1980. The matter was taken under advisement. Having carefully considered the administrative record, the memoranda, and the oral arguments of counsel, the court is now ready to render its decision.

## JURISDICTION AND VENUE

The court has jurisdiction of this action by virtue of 28 U.S.C. §§ 1331(a) and 1361 (1976). Venue lies in the Central Division of this court under 28 U.S.C. § 1391(e) (1976).

## INTRODUCTION

■ The basic issue to be resolved is whether plaintiffs have "valid existing rights" under their prospecting permits which would bring them under the savings clause of the FCLAA. If they do, the Secretary would be authorized to grant plaintiffs' applications for extension of their prospecting permits. This issue falls in an undetermined area of the law between two fairly well-defined poles. The progression of rights under the pre-FCLAA scheme for federal coal development involved three steps: the issuance of a prospecting permit, the extension of the prospecting permit,

and the issuance of a preference right lease if the permittee showed discovery of coal in commercial quantities. On the one hand, courts have consistently held that a mere application for a prospecting permit does not give rise to a "valid existing right" that survives the enactment of the FCLAA. *American Nuclear Corp. v. Andrus*, 434 F.Supp. 1035 (D.Wyo.1977). On the other hand, courts have held that an application for a preference right lease does give the applicant a "valid existing right" when the requisite discovery is shown. *See NRDC v. Berklund*, 458 F.Supp. 925, 933–35 (D.D.C. 1978), *aff'd*, D.C.Cir., 609 F.2d 553; *Utah International, Inc. v. Andrus*, 488 F.Supp. 962, at 966 (D.Utah 1979).

For the reasons set forth below, the court is of the opinion that both Peterson and Hiko Bell possessed valid existing rights to have their extension applications considered by the Secretary under the pre-FCLAA law, and, therefore, the rejection of their applications was arbitrary, capricious, an abuse of discretion, and not in accordance with law.

## FACTS

The facts in this case are not in dispute and may be summarized from the administrative record and the IBLA decision as follows. Both Peterson and Hiko Bell held coal prospecting permits that were issued for two-year terms. Peterson's permits U–4738 and U–4739 were to expire May 31, 1970, and permits U–5296 and U–5297 were to expire June 30, 1970. Hiko Bell's permits U–9901 and U–11898 were to expire June 30, 1972. In each case they filed applications for the extension of their permits pursuant to section 2(b) of the Mineral Lands Leasing Act of 1920, ch. 85, § 2, 41 Stat. 438 (see 30 U.S.C.A. § 201(b) (1971); current version codified at 30 U.S.C. § 201(b) (1976), and under 43 C.F.R. § 3511.-3–1 as then written. The Regional Mining Supervisor of the Geological Survey recommended that each permit be extended for an additional two years. The Interior Department took no immediate action to approve or disapprove the permit extensions.

Section 2(b) provides:

Any coal prospecting permit ... may be extended by the Secretary for a period of two years, if he shall find that the permittee has been unable, with the exercise of reasonable diligence to determine the existence or workability of coal deposits in the area covered by the permit and desires to prosecute further prospecting or exploration, or for other reasons in the opinion of the Secretary warranting such extension.

Prior to the 1970's, extensions were granted pro forma upon the Geological Survey's recommendation almost without exception. During the early 1970's, however, Congress began to express dissatisfaction with the country's coal leasing policy and then beginning in 1971, the Department of Interior began an informal and undisclosed moratorium on coal prospecting permits, extensions, and preference right leases. *See Peabody Coal Co. v. Andrus*, 477 F.Supp. 120, 121 (D.Wyo.1979).

On February 13, 1973, the Secretary issued Order No. 2952, which rejected pending applications for prospecting permits. The Order was silent as to extensions and stated that nothing therein should "be deemed to restrict the rights of holders of prospecting permits issued prior to this directive to obtain preference right coal leases under section 2(b)."

On June 7, 1973, the Acting Associate Solicitor, Division of Public Lands, Department of the Interior, issued a departmental memorandum interpreting Order No. 2952 with regard to extensions of prospecting permits:

Secretarial Order No. 2952 does not bar granting of an extension to a coal prospecting permit. Order No. 2952 bars two discretionary actions, i. e., the issuance of new prospecting permits and the acceptance of applications of such permits. Order No. 2952, however, is completely silent on a third discretionary action, the granting of extensions of permittees. Although the tenor of the Secretarial Order might seem to be opposed to the extension of permits, Deputy Assistant Secre-

tary Berklund has assured me that it was intended to allow existing permits to be extended on the same basis as permits were extended prior to the Order. This is legally permissible under the Order, and Mr. Berklund's remarks settle the question of policy.

The Bureau of Land Management did not act in accordance with the above policy; instead, it continued the moratorium.

On August 4, 1976, Congress enacted the FCLAA, which, in effect, repealed section 2 of the Mineral Lands Leasing Act "subject to existing rights." Pub.L.No. 94–377, § 4, 90 Stat. 1085 (1976). The Act created a new way to administer the exploration and development of coal on federal lands.

On October 17, 1977, the BLM, by separate decisions, rejected plaintiffs' applications for extension on the ground that section 4 of the FCLAA "terminated the Secretary's authority to grant extensions of outstanding coal prospecting permits because the holder of a permit has no right to an extension, and the Act only preserved the Secretary's authority to grant 'valid existing rights.'" The IBLA affirmed the BLM's rejection of the applications for extension on September 12, 1978. 37 I.B.L.A. 18.

## THE IBLA DECISION

The rationale of the Administrative Law Judge was twofold. First, he reasoned that the Secretary was within his power when he suspended applications for extension pending implementation of the new "long-term" policy and that the current law at the end of that suspension period should be applied. Thus, he held that plaintiffs' arguments that they would have otherwise obtained an extension but for the Secretary's delay and the intervening FCLAA hold no merit. Second, the Law Judge reasoned that plaintiffs had no valid existing rights because extension of prospecting permits under section 2 was "dependent upon the exercise of discretion by the Secretary *as well as* compliance with the various requirements of the Act." 37 I.B.L.A. at 20 (emphasis in original). This discretion, he

maintains, vitiates any right that might otherwise accrue through conduct of the prospector in compliance with the Act and in reliance upon the past history and practice of granting virtually automatic extensions upon such compliance. He argued further that "discretionary acts are not metamorphosized into ministerial transactions by their mere repetition ...." *Id.* at 21.

## ARGUMENTS ON APPEAL

On appeal to this court, the government argues that the Secretary's discretion in extending prospecting permits defeats any claim by plaintiffs of having valid existing rights, and that section 4 of the FCLAA terminated the Secretary's authority to grant extensions. The government further argues that plaintiffs acquired no right to an extension by virtue of the delay in adjudicating their claims nor by the past practice of extending permits as a matter of course upon the recommendation of the regional mining supervisor.

Peterson argues that *Peabody Coal Co. v. Andrus*, 477 F.Supp. 120 (D.Wyo.1979), is strong precedent for this court's holding that Peterson had valid existing rights, and that the delay in agency action was inexcusable and estops the government from asserting that Peterson had no valid existing rights. Peterson contends that the savings clause of the FCLAA should be applied generously to protect prospectors because they have invested substantial effort and money in developing coal resources in reliance on the government's previous practices. Finally, Peterson argues that he was deprived of valid rights without due process of law.

Hiko Bell argues the basic unfairness of the government's position and that it had a "valuable right" under its prospecting permit based on a "Need for Consent" analysis. *See Need for Consent by Coal Prospecting Permittee and Applicant for Coal Lease to Government Exploration for Coal*, 57 I.D. 478 (1942). Hiko Bell also cites *Peabody Coal* as authority that an application for extension of a prospecting permit gives rise to a valid existing right. Furthermore, by

virtue of 5 U.S.C. § 558(c) (1976), which provides that "a license with reference to an activity of a continuing nature does not expire until the application [for renewal] has been finally determined by the agency," Hiko Bell asserts that its prospecting permits were valid and in existence at the time of the enactment of the FCLAA. This position is supported by *Rosebud Coal Sales Co. v. Andrus*, No. C 78–261K (D.Wyo. Oct. 17, 1979) (Order Reversing Decision of IBLA). Finally, Hiko Bell argues that contract law and estoppel obligate the government to grant its extension applications.

## DISCUSSION

*A. Does Agency Delay Create Valid Existing Rights?*

■ The court agrees with the Administrative Law Judge's first rationale for upholding the BLM's rejection of plaintiffs' extension applications. The Secretary did have discretion to suspend applications and the delay was not necessarily unreasonable in light of the reformulation of the nation's coal leasing policy. *See Utah International, Inc. v. Andrus*, 488 F.Supp. 962, at 974, 976 (D.Utah 1979). While the applications were thus suspended, the prospecting permits did not expire because they had not been finally determined. *Rosebud Coal Sales Co. v. Andrus*, No. C 78–261K (D.Wyo. Oct. 17, 1979); 5 U.S.C. § 558(c) (1976).

■ There is little doubt that the extension applications would have been granted if the same circumstances had been presented in the late 1960's. *See Peabody Coal Co. v. Andrus*, 477 F.Supp. 120, 121 (D.Wyo. 1979). It follows that but for the BLM's delay in acting on the application, the extension would likely have been granted. However, this of itself is neither sufficient to show that the extension application and permit constituted valid existing rights nor that section 4 of the FCLAA should terminate the Secretary's ability to grant the application. The conclusion on this point is simply that the prospecting permits, and the applications to extend them, continued until the date of the enactment of the FCLAA—at which time they either sur-

vived as valid existing rights or were terminated if they were not. The agency's delay, in and of itself, did not create valid existing rights.

*B. Did Plaintiffs Possess Valid Existing Rights Based on Other Factors?*

The crucial issue, therefore, is whether the prospecting permits and extension applications gave plaintiffs valid existing rights on the date of the enactment of the FCLAA. The BLM's rejection of plaintiffs' applications was based on a conclusory statement that "the holder of a permit has no right to an extension, and the Act only preserved the Secretary's authority to grant 'valid existing rights.'" The BLM's rejection letter further stated that the applications were being rejected because the Secretary no longer had authority to grant extensions. The Administrative Law Judge in the second prong of his reasoning did not perpetuate the circularity of the BLM's reasoning. He held that the Secretary had discretion to grant or deny the applications and that this discretion vitiates any claim of a right that might otherwise accrue through the conduct of the prospector as he complies with the Act and relies on past agency practices.

The decision in *Peabody Coal* is helpful to the analysis and disposition of this case on the question of valid existing rights. It provides a logical starting point not only because it considered issues similar to those in this case, but also because it reversed the same IBLA decision which formed part of the basis for the decision under review here. *See Peabody Coal Co.*, 34 I.B.L.A. 139 (1978), *rev'd*, 477 F.Supp. 120 (D.Wyo.1979).

In *Peabody Coal*, the facts were essentially the same as those in the instant case, with a few exceptions. In addition to its extension application filed in 1972, it also filed applications for preference right leases in 1974 covering the same lands. Peabody Coal also continued to work on the lands after the expiration of the permit, whereas the plaintiffs in the instant case did not because they were specifically directed in late 1973 to cease work.

The BLM rejected Peabody Coal's preference right lease applications because they were not filed within the initial two-year prospecting period. The IBLA held that the rejection of the preference right lease applications was final for want of timely appeal. With regard to the applications for extension of prospecting permits it held: 1) that the Secretary properly exercised his discretion by withholding action on the extension applications, 2) that the Secretary's discretion vitiated any claim that the applications were within the savings clause of the FCLAA as "valid existing rights," and 3) that the agency therefore had no authority to extend prospecting permits.

The United States District Court for Wyoming reversed the IBLA decision. The basic ground for reversal was that the agency's delay was inexcusable, and in light of that delay, the government's position that Peabody Coal had no valid existing rights was "untenable" and unfair. 477 F.Supp. at 123. Specifically, the District Court for Wyoming noted that prior to 1970 a prospector could rely on the policy of the Interior Department to extend automatically permits where he had complied with the applicable statutory and regulatory requirements. In addition, the court noted that although the Interior Department conducted an unofficial and undisclosed moratorium in the early 1970's on approving permits, extensions, and preference right leases, that in 1973 it was apparently Interior Department policy that extension of "prospecting permits was legally permissible and . . . that they were to be extended on the same basis as permits were extended prior to [Order No. 2952]." *Id.* The *Peabody Coal* opinion then analyzed the case law in the area, noting its scarcity, but observing that "there can be no doubt that *the status of a prospecting permit is superior to that of a mere application for a permit.*" *Id.* at 124 (emphasis added).

*Peabody Coal* is not directly on point with the instant case because of the additional fact that applications for preference right leases were also filed. For this reason, the decision did not have to hold squarely that an extension application gives the applicant a "valid existing right." Instead, the court held that the BLM's failure to act on the extension was not a proper basis for rejecting the preference right lease application, and ordered the BLM to grant a two-year extension of Peabody's prospecting permits and to issue coal leases if "commercial quantities" of coal are discovered. On this basis, the court held that Peabody Coal had valid existing rights at the time of the enactment of the FCLAA. *Id.* The rationale and holding of the *Peabody Coal* decision indicate that an extension application under the circumstances of the instant case ought to give rise to a valid existing right to have the application considered under pre-FCLAA law.

The government urges that to adopt the reasoning of *Peabody Coal* here would be inconsistent with this court's decision in *Utah International Inc. v. Andrus,* 488 F.Supp. 962 (D.Utah 1979). The issue in *Utah International* was whether the Secretary unlawfully withheld or unreasonably delayed action on approving a preference right lease so that Utah International was excused from exhausting its administrative remedies—the result of which would have been to allow the more favorable pre-FCLAA law to apply to the terms of the lease. Significantly, the issue in *Utah International* was *not* whether the delay of itself gave Utah International valid existing rights; nor was the issue whether the application *for* a preference right lease constituted a valid existing right. This court held in *Utah International* that although a nine-year delay was unfortunate and undesirable, the difficulties surrounding the reformulation of the nation's coal leasing policy made the delay reasonable when balanced against the permittee's desire merely to obtain more favorable pre-FCLAA lease terms. *See id.,* at 974, 976.

The court still adheres to its decision in *Utah International.* To the extent that *Peabody Coal* teaches that valid existing rights spring merely from what the court there, viewing a similar delay, felt was unreasonable, this court would disagree with both the premise that the delay is necessari-

ly unreasonable and the conclusion that valid existing rights spring therefrom.

On the other hand, to the extent that *Peabody Coal* teaches that agency discretion is not unbounded, and to the extent it indicates that prospecting permits and extension applications constitute valid existing rights, it is not inconsistent with *Utah International.* Although this court held that the agency's delay in *Utah International* was reasonable with respect to its effect on setting the *terms* of the preference right lease when granted, the same delay would not be reasonable as a basis to deprive plaintiffs in *Utah International, Peabody Coal,* or this case of their valid existing rights altogether. In other words, *Utah International* is distinguishable from *Peabody Coal* and this case in that the issue in the latter two cases was whether valid rights exist—as opposed to what the terms of those rights are.

█ The Law Judge in the present case relied on the IBLA decision in *Peabody Coal* to support the proposition that an application for extension does not give rise to a valid existing right since the application is subject to the discretion of the Secretary. The reversal of that IBLA decision on that very point severely undermines the validity of that conclusion. Indeed, this court is of the opinion that the subject extension applications give the applicants valid existing rights where, as here, they have met statutory and regulatory requirements and have expended substantial time and money to develop their prospecting permits. It would be unfair to encourage private development of coal on federal lands, with the attendant expenditures, without giving the applicant a fair opportunity to capitalize on his investment. The previous agency practice of automatically granting an extension upon the applicant meeting the statutory and regulatory requirements and upon the recommendation of the Regional Mining Supervisor has the effect of encouraging reliance on the consistency with which such extensions were granted. Such reliance, coupled with the expenditure of substantial time and effort, created a valid existing

right to have the merits of the application considered under pre-FCLAA law.

The Secretary does have discretion not to grant an extension under section 2(b) since it states that a prospecting permit "may be extended by the Secretary." 30 U.S.C.A. § 201(b) (1971) (repealed 1976). However, since that discretion was not being exercised at the time of the enactment of the FCLAA, the question of whether the permits and extension applications constituted valid existing rights is a separate issue. To reject the extension applications on the basis that the Secretary theoretically *could* have rejected them ignores the substantial interest that plaintiffs had in having their applications considered by virtue of their investment of time and money and their substantial reliance on the government's previous policy of liberally granting extensions. When the BLM finally rejected the applications, it did so not as an exercise of its discretion, but because it felt that section 4 of the FCLAA had removed the Secretary's authority to grant extensions.

Because of plaintiffs' substantial interest in the extension of their prospecting permits and because the Secretary had not exercised his discretion with regard to them prior to the enactment of the FCLAA, the court is of the opinion that the prospecting permits and the applications to extend them gave plaintiffs valid existing rights to have their applications considered. The court therefore finds that Peterson has valid existing rights in prospecting permits U–4738, U–4739, U–5296, and U–5297. The court further finds that Hiko Bell has valid existing rights in prospecting permits U–9901 and U–11898. Despite this finding, it would be inappropriate for this court to substitute its judgment for that of the Secretary by ordering him to extend the permits—even though the court would be inclined to do so if the discretion were its to exercise. Nevertheless, the language of section 2(b) is discretionary (permits "*may* be extended").

█ Therefore, the court will order the Secretary to exercise his discretion with respect to the applications to extend the

above-numbered permits. The merits of the applications should be given the same consideration, and the permits should be granted or rejected in the same manner as they would have been, prior to the enactment of the FCLAA and reformulation of the coal leasing policy. Furthermore, if an extension is granted, plaintiffs shall also be given the opportunity to obtain preference right leases covering the lands involved in the permits described above. The court's decision in *Utah International* shall apply to plaintiffs in determining their qualification for a preference right lease and in setting the terms of the lease.

Pursuant to 5 U.S.C. § 706(2) (1976), the court hereby reverses the decision of the IBLA in this case on the grounds that the agency action was arbitrary, capricious, an abuse of discretion, and not in accordance with law. The case is remanded to the agency for further proceedings to consider granting the applications to extend the above-numbered permits in accordance with the terms of this order.

Accordingly,

IT IS HEREBY ORDERED that the decision of the Interior Board of Land Appeals be and the same is hereby reversed; it is

FURTHER ORDERED that plaintiff Peterson and plaintiff Hiko Bell's motions for summary judgment be granted to the extent specified herein; it is

FURTHER ORDERED that the government's motion for summary judgment be and the same is hereby denied; it is

FURTHER ORDERED that the Secretary shall exercise his discretion with due speed in granting or denying an extension term to commence from the date of his decision, for the permits numbered U–4738, U–4739, U–5296, U–5297, U–9901, and U–11898 and on the same basis as similar permits would have been granted or rejected prior to the enactment of the FCLAA; it is

FURTHER ORDERED that plaintiffs be permitted to submit evidence of commercial quantities of coal discovered on the lands covered by their permits, and that plaintiffs' permits be given fair consideration for the granting of preference right leases pursuant to the guidelines of this court's decision in *Utah International v. Andrus*, 488 F.Supp. 962 (D.Utah 1979), and that if plaintiffs are able to show discovery of coal in "commercial quantities," the Secretary shall issue coal leases on said permits pursuant to the terms and conditions set by law at the time of approval of the lease applications.