**SEA–LAND SERVICE, INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**Court No. 80–12–00159.**

United States Court of
International Trade.

March 31, 1988.

Gerald A. Malia and Tanya J. Potter, Ragan & Mason, Washington, D.C. (at the trial and on the brief), Robert S. Zuckerman, Edison, N.J., (of counsel), for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office (Barbara M. Epstein, New York City, at trial and on the brief), for defendant.

RE, Chief Judge:

In this action, plaintiff, Sea–Land Service, Inc. (Sea–Land), seeks to recover customs duties paid for work done and equipment provided in a foreign country to its vessel, M/V *Sea–Land Adventurer* (*Adventurer*), a vessel documented under the laws of the United States to engage in foreign trade.

Pursuant to 19 U.S.C. § 1466(a) (Supp. III 1979), the cost of "repairs," "repair parts," "materials," and "equipment" provided in a foreign country to a United States documented vessel is subject to a duty of 50 per centum *ad valorem*, when the vessel first arrives in the United States. Accordingly, upon the entry of the *Adventurer* into the United States, the Customs Service assessed duties of 50 per centum *ad valorem* on plaintiff's estimated cost of the work performed and the equipment provided to the vessel in foreign ports.

Plaintiff contends that the repair duty provisions of section 1466(a) do not apply to the work done on the *Adventurer* since that work did not constitute "repairs" within the meaning of the statute. It is plaintiff's position that, although the work was done after the vessel was documented, it was performed pursuant to a warranty clause in the construction contract, as a part of the original construction process, and, therefore, does not come within the meaning or intent of the foreign repair statute.

Defendant contends that a presumption exists that foreign material or foreign work performed on a foreign-built vessel, after United States documentation, is dutiable under section 1466(a), and is not part of the original construction of the vessel. Defendant further contends that plaintiff has failed to establish that most of the items at issue were, in fact, part of the original construction of the vessel.

The pertinent provisions of 19 U.S.C. § 1466(a) (Supp. III 1979) provide as follows:

Equipment and repairs of vessels

(a) Vessels subject to duty; penalties

The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country....

The question presented is whether work and equipment provided to a vessel in a foreign country, after United States documentation, pursuant to a warranty clause in the construction contract, are dutiable under 19 U.S.C. § 1466(a) as foreign "repairs," "repair parts," "materials," or "equipment," or are free of duty as part of the original construction of the vessel.

■ The court has carefully considered the governing legislation, relevant case law, testimony of record, and the parties' proposed joint legal standard. It is the holding of the court that as to those items in dispute, the applicable standard or criterion is that work done or equipment added pursuant to the specifications of the original contract for the construction of the vessel, are not dutiable. Hence, all work performed and equipment added, not required by the contract are dutiable items under the foreign repair statute. Consequently, the case is remanded to the Customs Service to determine, in conformance with the standard enunciated in this opinion, which items are subject to duty under

section 1466(a) as "repairs," "repair parts," "materials," or "equipment."

The *Adventurer* was constructed as a new vessel from an existing refurbished midbody, by Mitsubishi Heavy Industries, Inc., in Japan. The construction contract contained a "guarantee clause" for a 12–month period. This clause warranted against all defects which were "due to defective material or poor workmanship, ordinary wear and tear excepted...."

On July 12, 1978, the *Adventurer* was issued a United States Certificate of Registry and was documented under United States law to engage in foreign trade. Sea trials were conducted on the vessel on July 15 and 16, 1978, to ensure that the vessel was seaworthy. On July 27, 1978, it was delivered by its builder to its owner, Sea–Land.

During the 8 months between the date of delivery and the date it first entered the United States, April 5, 1979, various items of work and equipment were provided to the *Adventurer*, while it was engaged in foreign trade in Japan.

Upon the vessel's arrival in the United States, plaintiff filed entry papers which noted 259 items of work and materials, which were listed as "Guarantee Work–No Cost Items." All of the work done on the vessel was completed within 8 months of its delivery, and prior to its entry into the United States.

Pursuant to Customs Regulation 19 C.F.R. § 4.14(k) (1979), plaintiff petitioned for relief from the duty for the foreign work performed on the vessel.

The Customs Service determined that some of the items listed by plaintiff on its petition were additions or alterations to the hull or hull fittings, transportation expenses, consumable supplies, or non-repair type inspections, and, therefore, not dutiable under 19 U.S.C. § 1466(a). As to other items listed by plaintiff, Customs determined that they constituted "repairs," "repair parts," "materials," or "equipment" within the common meaning of those terms, and were not encompassed by any exception to section 1466(a). Consequently, a duty was assessed on those items.

Plaintiff protests the assessment and commenced this action to recover its payment.

It should be noted that Sea–Land does not make any claim for the remission of duties pursuant to 19 U.S.C. § 1466(d) (Supp. III 1979). Remission of duties assessed under 1466(a) is authorized under section 1466(d), when a vessel is "compelled, by stress of weather or other casualty" to make repairs or purchases outside of the United States to secure the safety and seaworthiness of the vessel. 19 U.S.C. § 1466(d)(1). *See, e.g., Suwannee Steamship Co. v. United States,* 79 Cust.Ct. 19, 22, C.D. 4708, 435 F.Supp. 389, 391 (1977). Hence, Sea–Land does not seek a remission of duties under any exception to section 1466(a) but rather, contends that the foreign repair statute does not apply to the work done on the *Adventurer*.

Sea–Land has moved for judicial notice of certain documents and to admit certain discovery material into evidence. The court has considered all relevant materials, documents, and evidence presented. In effect, the court has granted plaintiff's motions, and acknowledges the cooperation of the parties during the trial, and counsels' helpful post-trial briefs.

Historically, vessels have been treated as *sui generis* and are not subject to duty under the tariff laws. *See The Conqueror,* 166 U.S. 110, 118, 17 S.Ct. 510, 513, 41 L.Ed. 937 (1897). The tariff schedules expressly provide that, "vessels which are not 'yachts or pleasure boats' within the purview of subpart D, part 6, of schedule 6, are not articles subject to the provisions of these schedules." *See* Tariff Schedules of the United States, General Headnotes and Rules of Interpretation, 19 U.S.C. § 1202, General Headnote 5(f) (1982).

The Supreme Court in *The Conqueror,* left no doubt that while a vessel may bear items that enter the stream of commerce, the vessel itself is not an article of commerce. The principle, therefore, is clear that, although the vessel is a vehicle of dutiable articles, the vessel itself is not a dutiable article. *See* 166 U.S. 110, 115, 17 S.Ct. 510, 512, 41 L.Ed. 937 (1897). Accord-

ingly, the cost of foreign construction of a vessel is not dutiable. By the same reasoning, the vessel's original equipment is also not dutiable since it is part of the construction cost of the vessel. *See* 22 Op. Att'y Gen. 360, 361 (1899).

Although the principle is clear and uncontested that the cost of the foreign construction of a vessel is not dutiable, the foreign repair statute, 19 U.S.C. § 1466(a), provides that foreign repairs to a United States documented vessel, and replacement equipment are dutiable, unless exempt by the statute. It is therefore clear at the outset that the foreign repair statute applies to *repairs* and not the cost of the construction of the vessel. In general terms, therefore, the question to be answered is whether work performed on the vessel subsequent to documentation is part of the original construction, or repairs within the meaning of the foreign repair statute. The answer cannot be a categorical response, but depends upon the nature of the work, and the facts of the particular case.

█ It would seem obvious that a variety of factors must be considered to determine, in each case, whether the work done was a continuation or reasonable extension of the "original construction," or constituted "repairs." Some of the salient factors to be considered include the terms and nature of the guarantee or warranty clause, when the work was actually performed, and the nature and purpose of the work and the equipment provided. Surely, it is important to determine whether the "guarantee clause" is indeed a warranty of fitness for use and quality, and is limited in time to what may properly be deemed part of the original construction. Hence, one cannot quarrel with the government's position that a service contract cannot be labeled to be a warranty clause, thereby excluding work performed under that clause from the duty provisions of the foreign repair statute.

█ There can be no doubt that the length or duration of the warranty clause must be reasonable, and only long enough to permit the owner of the vessel to determine whether there has been compliance with the construction specifications. Hence, it is necessary to ascertain whether the work performed pursuant to the warranty clause related to a compliance with the specifications set forth in the original contract for the construction of the vessel.

Sea–Land contends that the work performed on the *Adventurer* was done to correct defects in the ship's original materials and workmanship, and to provide missing items specified in the construction contract, which were only discoverable after the ship was delivered. In support of its position, Sea–Land points out that modern shipbuilding is so complex an enterprise, that it is not possible for a shipowner to discover immediately upon delivery whether the ship meets the specifications of the contract.

Plaintiff's witness, Mr. Richard T. Soper, former executive vice president of Sea–Land, testified that due to the complexity of construction, it is customary within the industry to include a guarantee clause in the vessel construction contract. Mr. Soper testified that the clause in the *Adventurer's* construction contract warrants that within a 12–month period all requirements of the construction contract will be met. He added, however, that the clause is not a pre-paid service contract. Consequently, Sea–Land maintains that the work performed is not dutiable as repairs since it was performed pursuant to the guarantee or warranty clause, and, therefore, is part of the construction process. According to Sea–Land, only work done as a result of ordinary wear and tear should be considered or treated as repairs within the foreign repair statute.

The construction contract for the *Adventurer* contained a "guarantee of material and workmanship" clause which provided in pertinent part:

> The BUILDER, for the period of twelve (12) months from the date of delivery of the NEW VESSEL to the OWNER, guarantees any alteration or addition to the NEW VESSEL for which responsibility has been assumed by the BUILDER in accordance with the at-

tached Specifications, and all parts and equipment of the NEW VESSEL that are manufactured, furnished or supplied by the BUILDER under this CONTRACT and the attached Specifications against all defects which are due to defective material or poor workmanship, ordinary wear and tear excepted. . . .

The government agrees that it is standard practice for builders to contract for warranties with private sector customers, but does not agree with Sea–Land's assertion that 12 months is the standard warranty period. The government stresses that it is "axiomatic that at some point work and equipment provided to a vessel cease to be part of the 'original construction' of the vessel, and become 'repairs' and 'equipment' within the meaning of section 1466."

Both parties have agreed with the definition of "repair" found in *Webster's Third New International Dictionary* 1923 (1981): "to restore by replacing a part or putting together what is torn or broken: FIX, MEND . . . to make good: REMEDY. . . ." Sea–Land contends that the common meaning of the term "repair" is limited to replacing or restoring "worn out" articles. The government, however, maintains that the legislature did not intend "so restrictive a meaning to the term 'repairs' as used in section 1466." In support of its position the government offered the testimony of Admiral Ben Lehman, to explain the meaning of the term "repair" as used in the shipbuilding industry.

Admiral Lehman is a retired rear admiral in the United States Naval Reserves, a past vice president of engineering of Litton Industries Ship Systems Division, a past director of engineering for Lockheed Shipbuilding and Construction Co., and has over 45 years of experience in the designing and repairing of ships. He testified that the correction of an item not functioning at the delivery of the vessel is part of the construction process, and is not a repair. Admiral Lehman also testified that any equipment that was required by the contract, but was missing at the delivery of the vessel, is also a fulfillment of the construction contract.

Admiral Lehman testified that if a guarantee item did not comply with the contract specifications, and corrective remedial action was taken, that action or adjustment would also be part of "new construction." He also testified that subsequent correction of latent defects and design deficiencies, which defy detection before delivery, is part of the "new construction process," because the replacement is not due to ordinary wear and tear.

Admiral Lehman expressed his view as to work performed which is not required by the construction contract. He testified that if an item meets the vessel's specifications, but is altered or improved beyond that which was required by the contract specifications, that alteration or improvement does not constitute original construction. Hence, at the time of delivery if certain items were functioning in accordance with contract specifications, and were later replaced, that work would not be part of the new or original construction. That work would not be part of the original construction even if it could be shown that the work and equipment were supplied under a guarantee provision in the contract.

Initially, the government contended that a vessel is "legally complete" upon documentation, and, therefore, all work done on the vessel subsequent to its documentation is "repair" or "equipment" within the meaning of section 1466. The government has receded from this position and the parties now agree that some post-documentation items are not dutiable under section 1466(a), the foreign repair statute. For example, the parties agree that alterations or additions to the hull of the vessel or fittings to the hull, are not "repairs" or "equipment" within the meaning of section 1466(a). *See* 14 Cust. Bull. 951 (Dec. 12, 1979).

■ The parties also agree, however, that there is a presumption that foreign material or foreign work performed on a foreignbuilt vessel after United States documentation, is dutiable as a "repair" or "equipment" under section 1466(a). In effect, the parties agree on the presumption of correctness that attaches to the decision

of the Secretary of Treasury. *See* 28 U.S.C. § 2639(a)(1) (1982). Hence, the government, maintains that Sea–Land must rebut the presumption that post-documentation work is dutiable under section 1466(a), by establishing that the work or material is, in fact, part of the original vessel construction. The government submits that the criteria used to determine whether an item is nondutiable as part of the original construction "should not result in the weakening of the protection which Congress provided to United States workers and to United States manufacturers of vessel supplies and parts."

It is evident from the legislative history of 19 U.S.C. § 1466, a revision of section 466 of the Tariff Act of 1930, that the basic purpose of the foreign repair statute was to protect American labor. *See* H.R.Rep. No. 7, 71st Cong., 1st Sess. 4 (1929). In *Suwannee Steamship Co. v. United States,* the court noted that the unsuccessful attempts in the House of Representatives to amend section 466 so as to increase greatly the situations in which duties were to be remitted to shipowners, were indicative of the strong measures sought by Congress to protect the domestic shipbuilding industry. *See* 79 Cust.Ct. 19, 25–26, C.D. 4708, 435 F.Supp. 389, 393–94 (1977). Simply stated, the statute is intended "to encourage U.S. shipowners to employ U.S. labor whenever possible." *Mount Washington Tanker Co. v. United States,* 69 CCPA 23, 28, 665 F.2d 340, 344 (1981).

Although the court has considered the "proposed joint legal standard" submitted by the parties, and has found it to be helpful, the court has not adopted that standard as suggested by the parties. Rather, the court will set forth the basic standard, or criterion to be employed in differentiating between new construction and repairs within the foreign repair statute. In accordance with this standard or criterion the Customs Service may establish more detailed and appropriate guidelines in order to assist its personnel and interested parties.

Mindful of the legislative intent and purpose of section 1466, the court sets forth the following applicable standard or criterion to be used in determining whether a specific item is part of the original construction of the vessel or is a dutiable repair, under the foreign repair statute. All work done and equipment added pursuant to the original specifications of the contract for the construction of the vessel, are not dutiable. Hence, all work performed and equipment added, not required by the contract, are dutiable items under the statute. This basic standard is limited to work and equipment provided within a reasonable period of time after delivery of the vessel. To give an extreme example, one cannot rely upon a 10–year service contract and call it a warranty clause. Were there to be no limitation on the period of time, as the government notes, a claim could be made that replacing a 9–year–old piece of equipment is not a repair under section 1466(a) since it was made under a 10–year warranty clause. Hence, it is clear that the court's holding does not apply to a service contract that, in effect, provides for the repair of the vessel.

Furthermore, it is well to note that, under 19 U.S.C. § 1466(a), the question of dutiability is not necessarily answered by determining who should bear or has borne the cost of the work performed, but rather, whether the work was necessary to comply with the original specifications of the construction contract.

Therefore, it is the holding of the court that the case is remanded to the Customs Service in order that it may determine which of the items in dispute are dutiable under 19 U.S.C. § 1466(a), pursuant to the standard or criterion set forth in this opinion.

Accordingly, for the reasons stated, it is

ORDERED that the case is remanded to the Customs Service with instructions that it determine in accordance with the standard or criterion set forth in this opinion, which of the items in dispute in this action are dutiable under 19 U.S.C. 1466(a). It is also

ORDERED that within 60 days after entry of this order, the Customs Service will

make its determination and report to the court the results of its determination on remand. It is also

ORDERED that if the parties cannot agree as to the items in dispute, either party may move for a trial on the question of dutiability of the specific item or items in dispute.